# LEWISBURG, TENNESSEE v. MRS. LULA EMERSON, et al.

Middle Section.    April 16, 1927.

No petition for Certiorari was filed.

1. **Highways. A public way may be established by adverse user.**

It is long settled law that a public way may be established by evidence of adverse user for a long period of time, without any express dedication, if it is shown that the user is under a claim of right, and not merely permissive, but mere permissive use is not sufficient to establish a dedication.

2. **Highways. Dedication. Dedication is a question of intention and the intent must be clearly and satisfactorily proved.**

To establish dedication by implication there must be proof of facts from which it positively and unequivocally appears that the owner intended to part permanently with his property and vest it in the public, and that there can be no other reasonable explanation of his conduct.

3. **Highways. To establish a road by prescription there must be a continuous adverse user for a period of twenty years.**

To establish a prescriptive right it must appear that there has been a continuous user of the way for a period of twenty years under a claim of right adverse to the right of the owner of the land over which it passes-not a mere permissive use.

4. **Highways. Evidence. Evidence held to show road not established by adverse user.**

Where the evidence showed that three owners of adjoining land had used a private way for a great number of years, but that it had at all times been used with the permission of the owner, held not sufficient to establish a road by adverse use.

5. **Highways. Way of necessity.**

A way of necessity is dependent upon an implied grant, and cannot exist where there never was any unity of ownership of the alleged dominant and servient estates, for no one can have a way of necessity over the land of a stranger.

6. **Highways. Way of necessity can not be had when it is only a mere convenience.**
　　Mere convenience is not enough to form a basis of a way of necessity. It is well settled that a party can not have a way of necessity through the land of another when the necessary way to a highway can be obtained through his own land, however convenient and useful another way might be.

7. **Highways. The right to a way of necessity must arise at the time of the grant.**
　　The necessity for the road must arise at the time of the grant and it therefore follows that the necessity must not be created by the party claiming the right-of-way.

8. **Highways. Evidence. Evidence in instant case held not to show right to a way of necessity.**
　　Where the evidence showed that the party had another out let to a highway, but that it was over a poorer road and a much longer distance to the city than the way sought to be opened held that mere convenience will not justify the opening of a way of necessity and the party having an outlet could not open the new road.

9. **Easements. Permissive use of a road does not create an easement that will follow the land.**
　　Where party owning land had been permitted by adjoining landowners to use a private way, held that an easement was not created that would pass with the sale of the land.

Appeal from Chancery Court of Marshall County; Hon. Thomas B. Lytle, Chancellor.

Affirmed.

R. C. Armstrong, of Lewisburg, for appellant.

W. P. McClure, of Lewisburg, Thos. W. Schlater, of Nashville, for appellees.

DeWITT, J.,　This is a controversy over the use of a road over the lands of defendants, Mrs. Lula Emerson and her daughter, Mrs. Adams. The bill was filed on September 15, 1924 by the municipal corporation styled Lewisburg, Tennessee; the purpose of the suit being to compel the defendants to unlock gates on the road leading from a public road through their premises to the property of complainant, on which are located a reservoir and a filtration plant as part of its waterworks system, and also to establish by decree an easement in favor of Lewisburg, upon three grounds, first, that the road had been dedicated to the public and used by the public for over fifty years; second, that defendants were estopped because it was a part of the consideration paid to Frank Emerson, the deceased husband of Mrs. Emerson, and father of Mrs. Adams, that the road was to be kept open; third, that the complainant was entitled to the easement by implication. These propositions were duly traversed by answer of the defendants. The Chancellor held that none of them were sustained and dismissed the bill. From his decree the complainant has appealed and assigned errors. In brief, it is insisted that the Chancellor erred in not holding that the road was a public

road; that complainant was entitled to the easement by prescription; that complainant had an easement by implication; and that it had the right to use said road by agreement with said Emerson as a part of the consideration for a deed of Emerson and wife to the complainant, which will be hereafter described.

On page 38 of the transcript is a map showing the land and roads referred to in the pleadings and testimony; and the accuracy of this map being not in dispute, we adopt it and make it a part of our findings as a correct exposition of said lands and roads. The road in controversy is shown by a blue line running from a public road at the letter G, northwestwardly over lands now belonging to the defendants, to the letter F, and at various places, thereon are three gates. This road then is run from the said point marked F over lands now belonging to complainant westwardly and northwardly to another public road, at a point marked D, where it connected with another public road running westwardly from Lewisburg to a place called Wilson Hill, or Globe. Lewisburg owns the tract of about 56 acres on which it has constructed and maintains a lake or reservoir from which a pipe line runs into the city; and also a filtration plant. It purchased this tract from W. F. Emerson and wife, the defendant Mrs. Lula Emerson, by deed dated Nov. 20, 1909. W. F. Emerson died in 1921. On June 5, 1907 Emerson and wife conveyed to Lewisburg all of their right, title and interest in and to all of the watercourses, or springs, with two exceptions, on a tract of 102 acres, which included the said tract of fifty-six acres so purchased from them in 1909. The deed to these water-rights contains the following grant:

"We further grant and give and convey to said corporation rights of ingress and egress to and from the land upon which said springs are located, and where the pipe line is laid, for the purpose of constructing, operating and maintaining same."

At the time of the purchase of the fifty-six acres, to-wit: November 20, 1909, Mr. and Mrs. Emerson resided thereon, and had resided since about 1896, or 1897. They had contracted to purchase from the heirs of Richardson four tracts aggregating fifty-nine and ninety-three hundredths acres, and consisting of one contiguous tract adjoining the lands which they sold in November to Lewisburg. The deed of the Richardson heirs was dated September 28, 1909, but was not finally executed and delivered until sometime later. Mrs. Emerson testified that it was not actually delivered until after the delivery of the deed of herself and her husband conveying the fifty-six-acre tract to Lewisburg. Upon the delivery of the deed by the Richardson heirs, Mr. and Mrs. Emerson went to reside upon the tract therein conveyed, in a house situated near the southern terminus of the road in controversy, and fronting a public road leading to Bluff Springs. The road in controversy runs over this Richardson land, which has been thus

occupied by the Emersons from November, 1909 until the present time.

In the year 1913 Lewisburg completed a dam on the fifty-six acre tract, and has since maintained therewith a reservoir. In 1924 it became necessary for Lewisburg to secure an additional supply of water, and to also construct a filtration plant. This filtration plant was located about 200 feet south of the dam on the fifty-six acre tract, mentioned in the record as the old Cochran place. The new and additional water supply was procured by constructing another lock and dam about two miles south of the old dam, and the 'nearest way from the old dam and the residence of the employee in charge of the old reservoir to the new dam and reservoir, is by going over this road in controversy on the lands of the defendants to the public road leading to Bluff Springs; otherwise travel thereto must be northward to the Wilson Hill public road, then eastward and around by connections of public roads to the Bluff Springs road. By the former route the distance is about two miles. By the latter route it is six miles. There is a steep hill on the Wilson Hill road a short distance east of point D on the map, the intersection of the road over the lands of Lewisburg with the Wilson Hill public road. The evidence is that it is impossible to haul heavy loads up this hill, or rather to haul more than half by this route of a load that can be hauled by the other route. It is necessary for the municipality to have two tons of alum hauled every other day from the old reservoir and filtration plant to the said new plant. It is also necessary that the resident employee of the old reservoir and filtration plant, visit the new reservoir every other day and also whenever any emergency may arise. The ordinary purposes of these visits are to refuse the compensator of the motors, oil the motors, feed the water with copper sulphate, and attend to any necessary repairs. On June 10, 1911 Lewisburg purchased the northernmost tract adjoining the Wilson Hill road and known as the McGregor tract. From Lewisburg this is distant about four miles. The city has the use of public roads leading from it to these plants so situated two miles distant from each other. The distance from Lewisburg to the old reservoir by the Wilson Hill road is less than the distance by the other roads and finally by the road in controversy over the lands of defendants.

For some years prior to June, 1907, the three families of McGregors, Emersons and Richardsons owned these three tracts of land adjoining each other between the two public roads, the Wilson Hill or Globe road on the north, and the Bluff Springs road on the southeast. The Emerson tract, or fifty-six acres, later sold to Lewisburg, lies between the McGregor tract on the north and the Richardson tract on the southeast. It does not touch either of these public roads. At the time when the Emersons contracted to sell this tract

to Lewisburg they evidently had contracted to purchase the Richardson lands.

Beginning with a narrow path, finally a rough road through the fields more than forty years prior to the filing of the bill, was established by the three families; a road connecting the Wilson Hill public road and the public road leading to Bluff Springs. On the lands now owned by Lewisburg the route has been somewhat, but not very materially, changed. Lewisburg maintains a gate at the northern terminus of this road, and on or at this gate is a sign, "no trespassing." The evidence shows that at times it has maintained hog pens and cultivated corn at places on this road. It does not permit the public to travel over this road over its lands.

The road over defendants' land is plainly marked, and three gates have always been maintained thereon, one at the southern terminus, another at the northwestern corner of defendants' land, and the other somewhere between these gates. In wet weather the road is bad, in fact Mrs. Emerson describes it as almost impassable during such time. It was evidently about such a road when Lewisburg purchased the tract from the Emersons in 1909. The evidence is that Mr. Emerson, at the time of said purchase, stipulated orally, that the road over said fifty-six-acre tract, was to be left open for people to go to the church at the place called Globe; that during a period of forty years there was much travel thereon by people going to church and school; that it was thus used by many neighbors; that it was never declared to be a public road, never accepted as such by the county court, but that for two or three years, not specified, it was worked under direction of one Richardson as overseer, under orders of Davis, a county road commissioner. It was, and is a fairly good road in dry weather. It contains no hills of consequence.

From the year 1910 to the completion of the dam in 1913, the municipality hauled some of its material by the Bluff Springs road and this road in controversy, but after sometime this was prohibited by Mr. Emerson for the reason that wagons were tearing up his road and property. The city then hauled its material by the way of the Wilson Hill road. Since that time, both during Mr. Emerson's lifetime, and since his death, certain contractors obtained permission of the Emersons to use said road over their property by paying therefor. Mrs. Emerson on occasions prohibited people from using the road. Both she and her husband gave permission to people to pass over it. Shortly before the filing of the bill in this cause Mrs. Emerson locked the gates for the purpose, as she said, of keeping the sightseeing people from going through on Sundays. In the deed of the Emersons to Lewisburg of November 20, 1909, no reference was made to this road or the use thereof. The road however, covered by the

three gates, was plainly marked and easily discernible, connecting the two public roads.

It is long-settled law that a public way may be established by evidence of adverse user for a long period of time, without any express dedication, if it is shown that the user is under a claim of right, and not merely permissive, but mere permissive use is not sufficient to establish a dedication.   Wilson v. Acree, 97 Tenn., 377, 37 S. W., 90; Worth v. Dawson, 1 Sneed, 59; Sharp v. Mynatt, 1 Lea, 375.   In the case before us no express dedication is claimed.   A dedication is relied on by implication from the conduct of the owners, and the facts and circumstances disclosed.   To establish dedication by implication there must be proof of facts from which it positively and unequivocally appears that the owner intended to part permanently with his property and vest it in ·the public, and that there can be no other reasonable explanation of his conduct.   Dedication is a question of intention, and the intent must be clearly and satisfactorily proved.   McKinney v. Duncan, 121 Tenn., 265, 118 S. W., 683. In that case it was held that the mere fact that persons living in the neighborhood of a tract of uninclosed and unimproved woodland, were allowed to use a pass-way across it, repairing it from time to time, without interruption for thirty years, did not show an intention of the owners to dedicate the way to the public.   In Jackson v. State, 6 Cold., 532, it is said:

"Dedication of a road to the public use over the waste and uninclosed lands of an individual, ought not to be inferred from bare use alone. . . . It has been held that the fact that a farmer leaves a lane through his farm for his own convenience, and permits the public to use it as a highway for fifteen years, does not warrant the inference of dedication. An intention to dedicate must be obvious, and the same act which would warrant the inference in cities and towns would be quite insufficient in sparsely settled agricultural districts."

In Worth v. Dawson, supra, it was said:

"There is no evidence in this record showing a dedication by the owner of the way in question to the use of the public, or of any such intention on his part. The proof establishes nothing more than a mere license, or permission of the owner to the inhabitants of a local neighborhood, to use the pathway as a matter of favor and convenience; and such use being only by sufferance during the pleasure of the owner, he had a right to put an end to it at any moment. No use or acceptance of the way by the public is shown, nor any recognition of it by the county court. That a right-of-way may be claimed by a dedication to the public use by the owner of the soil, is not denied, but with us this doctrine must be cautiously admitted.

Its too easy application would defeat the right of the owner of the soil to have compensation for the damages sustained by laying out a road over his land, to which he is entitled, when such road is laid out by the proper authorities.''

To establish a prescriptive right it must appear that there has been a continuous ·user of the way for a period of twenty years under a claim of right adverse to the right of the owner of the land over which it passes—not a mere permissive use. Ferrell v. Ferrell, 1 Bax., 329; Long v. Mayberry, 96 Tenn., 378, 36 S. W., 1040. Under this rule was decided the case of Clayton v. Wise, 1 Tenn. C. C. A., 620, because the complainant showed that he had had the unobstructed use of the road for thirty years. In Murrey v. Ealy, 57 S. W., 412, it was held by the Court of Chancery Appeals (affirmed by the Supreme Court) that where the complainant's vendor and the defendant's ancestor and predecessor in title, were owners of adjoining land, and opened a lane between their premises for their personal convenience, and subsequently closed the lane and built a partnership fence, but complainant's vendor continued to use the way for thirteen years as an outlet from his residence to the public road, and complainant used it for seventeen years, such use was permissive only, and neither the complainant nor his vendor acquired prescriptive right to the use of the lane.

In Morristown v. Cain, 44 S. W., 475, the Court of Chancery Appeals (affirmed by the Supreme Court), quoting with approval Elliott on Roads and Streets, said: ·

''Any sign placed upon or across a way indicating that the use is merely permissive, with a right in the owner to reassert dominion at his pleasure, will prevent presumption of dedication, no matter how long the use may continue, thus the owner of the soil may effectively defeat a presumption arising from the use of the public, by placing gates and bars across the way.''

In Burkitt v. Battle, 59 S. W., 429 (affirmed by the Supreme Court), it was found that the road in controversy, although closed with gates, was a public road, and it was held that there may be a restricted dedication. But it was also held that the erection and maintenance of a gate is a fact and circumstance to look to in order to ascertain whether or not the use was merely permissive; and that of course, nothing else appearing, the erection and maintenance of gates would be a very strong circumstance to indicate that the use was merely permissive, and that the owner of the land thus sought to maintain evidence of his right of complete control and ownership.

In Whitesides v. Earles, 61 S. W., 1039, it was held by the Court of Chancery Appeals (affirmed by the Supreme Court) that the

partial working of the road by the overseer twice, and then abandoned, did not make it a public road. The county court had appointed persons to open the road, and they had laid out part of it, but made no report. Thereafter the landowners maintaining gates allowed people to pass over it only by permission.

A similar holding was made in the case of State ex rel. v. McCabe et al., 43 N. W., 322, to the effect that the fact that the relator and his father were permitted by road overseers to work out their road taxes on their private road, and said road overseer gave them plank for a culvert, and directed gravel to be hauled there, did not make it a public road.

The evidence as to the working of this road tends only to show that the road commissioner had some work done on this road as a matter of favor to the owners of these particular tracts of land. Where a way is opened as a private way, and intended as such, and this can be shown, no length of use by others will make it a public way. Washburn on Easements, p. 213; Hall v. McLeod, 2 Met. (Ky.), 98.

Applying all these rules to the facts shown in this record, we must conclude that this road was never a public road, and that so far as the public was concerned the use of it was merely permissive.

In disposing of the insistence that the road in question is or was a road of necessity, we must apply certain clearly settled rules to this situation. A way of necessity is dependent upon an implied grant, and cannot exist where there never was any unity of ownership of the alleged dominant and servient estates, for no one can have a way of necessity over the land of a stranger. 19 C. J., 921. It is insisted that this condition existed on November 20, 1909, because the Emersons just prior to the execution of their deed of that date, owned both the fifty-six-acre tract and the Richardson tract; that they severed these lands by conveying the fifty-six-acre tract to Lewisburg, thereby impliedly granting a way of necessity over said tract from the Richardson land to the public road south. However, their deed to the Richardson land was not delivered until after their sale of the other tract to Lewisburg. They thus sold one tract and purchased another. But Lewisburg did not thus acquire a land-locked tract, and therefore, this way was not reasonably necessary. In Rightsell v. Hale, 90 Tenn., 556, 18 S. W., 245, relied on by appellant, the owner of an estate severed it into two parts, conveying them to different purchasers, one of the parts was separated entirely from a public road by a narrow strip of land over which a way to the public road had been used by complainants, the owners of the said part, for a period of over fifty years. The doctrine of necessity was applied so as to establish the right of the complainants to the use of this way to the public road. Sim-

ilar facts were presented and the same rule was applied in the cases of Pearne v. Coal Creek Mining Co., 90 Tenn., 619, 18 S. W., 387, and Brown v. Berry, 6 Cold., 98. In each case there was a severance of one tract, or conveyance of one parcel by the owner of two, the parcel conveyed being wholly surrounded by the other parcel of the grantor, or the land of a stranger. The right to a way over the remaining land of the grantor was sustained as necessary to the use of the land granted. There was in each case such relation between the parties that the grantor was held to have impliedly conveyed an easement of outlet from his remaining land. In the case before us, there is no such situation. The land owned by Lewisburg was connected with the Wilson Hill road, a public road leading to Lewisburg, by a well marked road. Mere convenience is not enough to form a basis of a way of necessity. This was held in the Rightsell case. It is well settled that a party cannot have a way of necessity through the land of another when the necessary way to the highway can be obtained through his own land, however convenient and useful another way might be. 19 C. J., 22; Murrey v. Ealy, supra. Furthermore, if there were a necessity, it arose long after the conveyance of the fifty-six-acre tract to Lewisburg; and thus the rule of necessity cannot apply, for a way of necessity can be implied only when the necessity existed at the time of the grant. It must be determined from the conditions existing at the time of the conveyance. As a consequence of this rule the necessity must not be created by the party claiming the right-of-way. 19 C. J., 926, and cases there cited. It is evident that the mere necessity, if any, for the use of the road in question, has arisen out of the establishment of the additional waterworks plant two miles south of the old reservoir, in 1924. We are unable, therefore, to apply to this case the rule of necessity for establishing the easement insisted upon.

A more serious question is presented by the insistence that the appellant acquired by the deed of November 20, 1909, a right to use the road in question as appurtenant to the land therein conveyed. It is "horn-book" law that where an easement is annexed as appurtenant to land, either by grant or prescription, it passes as an appurtenance with the conveyance of the land, although not specifically mentioned in the deed, or even without the use of the term "appurtenances," unless expressly reserved from the operation of the grant; and thus without it appearing to be absolutely necessary to the enjoyment of the land conveyed. 19 C. J., 936; Murrey v. Ealy, supra. The question now before us is that of a private way as an appurtenance. It is as to such ways that we find the most frequent application of the rule that easements annexed as appurtenant to land pass as appurtenances with the conveyance, or

devise of the dominant estate, whether mentioned or not. 19 C. J., 937. The question is, did the Emersons, while owning the fifty-six-acre tract, have an easement over the Richardson land, and was it impliedly conveyed to Lewisburg; or was it merely a permissive use? A prescriptive right is not acquired by permissive use. Murrey v. Ealy, supra. A permissive use may be withdrawn at any time by the owner of the land. The right by prescription can only be acquired by an uninterrupted user by the acquiescence of the owner, for a period of twenty years, under an adverse claim of right. Ferrell v. Ferrell; Long v. Mayberry, supra. While the weight of evidence shows that prior to November 20, 1909 this road had been used for twenty years, and perhaps such use was uninterrupted, the use was merely by agreement of the owners of the three tracts of land aforesaid, and the use by any of them of the others' land was not adverse to the owner of the land. In other words, as we interpret it, this use was permissive only and did not ripen into the basis of a right by prescription. It is true that the Emersons at times permitted the appellant to use this road, but such use was evidently permissive. At other times they forbade the use of it, and such prohibition was complied with by the appellant until the bill in this cause was filed. Where the original use was permissive, as in this case, the rule as to presumption of a right or grant, which is the basis of prescription, has no application. An inception of the right in mere permission stamps the character of the use as permissive. The presumption of a grant is overcome by proof of the original permission, and, unless some distinct and positive assertion of a right hostile to the owner of the servient estate appears, the use cannot ripen into an easement by prescription, no matter how long the permission may continue. To establish a private right-of-way over the lands of another, the use and enjoyment thereof by the claimant must be shown to be adverse under a claim of right, exclusive, continuous, uninterrupted and with the knowledge and acquiescence of the owner of the land over which it is claimed. Reid v. Garnett, 101 Va., 47, 43 S. E., 182; Witt v. Creasy, 117 Va., 876, 86 S. E., 129; Williamson v. Abbott, 107 S. C., 397; 93 S. E., 15; Bartrug v. Edgell, 80 W. Va., 220, 92 S. E., 438; Graham v. Thompson (Va.), 129 S. E., 272; Weisner v. Joeger, 175 Wis., 281, 184 N. W., 1038; Pruitt v. Shafer, 137 Va., 658, 120 S. E., 275. In Reid v. Garnett, supra, it was aptly said:

"If it were once understood that a landowner by allowing his neighbors or the public to pass through his lands without objection over a pass-way which he himself used, would thereby, after the lapse of twenty years, confer on such neighbors, or any of them, the right to compel the way to be kept open

for his or their benefit and enjoyment, a prohibition against all such'travel would immediately ensue.''

The evidence shows that when Mr. Emerson conveyed. the land to Lewisburg, he made an oral condition that the road from the Richardson land northward to the Wilson Hill road should be kept open for his use; but Lewisburg has closed this road. It is difficult to see how it can insist upon this stipulation as a basis for its right to use the road over the land of defendants. They are not complaining of the closing of the road by Lewisburg. Of course, they could not be heard to make such complaint in view of their position in this cause. In Carnegie Realty Co. v. Railroad, 136 Tenn., 300, 189 S. W., 371, it was held that the purchaser of an easement created by a deed cannot be permitted to enjoy the easement and refuse to perform the undertaking which was the consideration of the easement. This rule would be applicable to this case in view of the closing by the appellant of the part of the road running over its land as the condition made by Emerson was a part of the consideration for the sale. ·

It is evidently productive of inconvenience for Lewisburg to be deprived of the use of this road under the present circumstances; but as it did not acquire this right as appurtenant to the land which it purchased, it is not entitled to maintain its bill to keep this road open for its use. To sustain the bill would be a violation of rights of property, or rather the taking of private property, without just compensation. For these reasons, we are of the opinion that there is no error in the decree of the Chancellor and it is affirmed. The costs of the appeal will be adjudged against the appellant and the sureties on its appeal bond.

Crownover, J., and Henderson, Special J., concur.