JOHN MOORE and wife, Ruth Moore, Appellants, v. L. D. QUEENER and wife, Lila Rose Queener, Appellees.—464 S.W.2d 296.

Western Section. November 18, 1970.

Certiorari Denied by Supreme Court March 1, 1971.

492

Edwin H. Arnold, Ben Simpson, Loudon, for appellants.

M. G. Goodwin, Dannel, Winfrey & McMurray, Lenoir City, for appellees.

NEARN, J. Complainants, John Moore and wife, Ruth Moore, have appealed from a Decree denying them injunctive relief, sought to enjoin the defendants, L. D. Queener and wife, Lila R. Queener, from closing a roadway from complainants' home to U. S. Highway 11 in Loudon County.

The Moores and Queeners are adjacent landowners of property purchased at a land auction sale held on August 26, 1967. The auction was conducted by Zirkle-

Rainwater Auction Company and the tract of land sought to be sold was known as the Lockett Subdivision, as shown on a proposed plat. The Lockett Subdivision was auctioned off by building lot numbers as shown on the property plat. The auction was held on the site of the Lockett Subdivision located near Philadelphia, London County, Tennessee, with the auctioneer moving about the land on the various lots to be sold, and selling at public outcry to the highest bidder. The sale was conducted according to certain terms and conditions, which will be hereinafter more fully set out. These terms and conditions were announced over a public address system as well as disseminated to the crowd by means of written circulars. Included on the circulars was a reproduction of the subdivision plat, indicating the location of the lots, roadways, and easements.

The original plat of the subdivision was recorded on September 1, 1967, subsequent to the sale of August 26, 1967. For a proper understanding of this Opinion, a copy of that portion of the plat germane to the issues will be found in the Appendix to this Opinion. The reproduction of the plat filed with this Opinion was made from the circular distributed at the auction sale.

The complainants, the auctioneer, and other witnesses testified that, prior to the sale of any of the lots, certain announcements were read aloud. The pertinent portion read aloud is as follows:

"RESTRICTIONS—There shall be no junk yards or the piling and storing of junk or rubbish on any lot or tract.

THE SALE of intoxicating beverages or liquors on any lot or tract is prohibited.

Should the property go as a whole no restrictions will apply.

THE EASEMENT shown and reserved on the west side of Lot No. 6 is reserved across Lot No. 6 for the use and benefit of Lots 4, 6 and 7.

THE ROAD shown running between Lots 8, 9, 10, 11 & 12 will be constructed and a 2 inch water line installed along this road. Should the property sell in lots where the road is necessary and the water necessary. Money has been deposited with the planning commission to guarantee this.

Should the property north of the highway sell as a whole or in such a way to render the road unnecessary, the road will not be constructed and the purchasers will get a deed to the road way.

WE RESERVE THE RIGHT to group or re-group any two or more tracts by adding 5% or a maximum of $1,000.00

The property is sold subject to all existing easements.

Will start—should it rain us out before finishing sale —then seller shall have the right of accepting the sales or rejecting them.''

The defendants did not deny that the announcements were made, in fact admitted hearing all of them, except that part about the easement being for the benefit of specific lots.

It is undisputed that after the announcements were made, the defendants first purchased Lot No. 4. Then the auctioneer sold Lot Nos. 1, 2 and 3 to other parties.

The defendants then purchased Lot Nos. 5 and 6, making separate bids on each lot.

One of the factual disputes in this case arises concerning the circumstances surrounding the bidding on Lot No. 6. The defendant, L. D. Queener, testified that when the bidding reached $2,000.00 on Lot No. 6 he refused to bid further. He further testified that the auctioneer advised him that without Lot No. 6, he would be blocked off; but, if he purchased Lot No. 6, "the easement went back to the lot." The defendant further testified that the auctioneer confirmed this fact with Mr. Rainwater and both the auctioneer and Mr. Rainwater yelled back to him, "Yes, if you get it (meaning Lot No. 6), you get the easement with it." The defendants stated they raised the bid and bought the lot and ceased any further bidding on any further lots.

The complainant, John Moore, testified that he was at the sale but remembered nothing regarding the actual sale of Lot No. 6, as he had no interest therein. Several witnesses, including a purchaser of other property at the sale, testified that they never heard any such conversations or announcements between defendant and the auctioneer or Rainwater as that testified to by defendants regarding the bidding on Lot No. 6. The only ones who testified they heard or were aware of the negotiations regarding the easement on Lot No. 6 were the defendants and their daughter.

The complainant testified that he had visited the property prior to the sale, having had his "eye" on it for some time. That he drove over the thirty-foot graveled easement and was desirous of using it, as it was to the front of the house located on Lot No. 7. That this grav-

eled road or drive had existed for some years. He testified that he heard the announcements as read, saw the plat with the easement indicated thereon, and purchased Lot No. 7 with the intent of using the easement granted to him over Lot No. 6, as stated in the announcement and shown on the plat.

The plat exactly as shown on the circular was recorded on September 1, 1967. The Queener deed and the Moore deed were delivered and recorded later in the month. Both the Moore and Queener deeds are silent as to the easement in question. However, the deeds both described the property conveyed by their appropriate Lot Nos. "as shown by Map of Record in Plat Book 2, Page 87 in the office of the Register of Deeds for Loudon County, Tennessee", followed by a metes and bounds description.

The proof is that Lot Nos. 8 through 12 were sold after Lot No. 7 and, evidently, to separate owners, as the fifty-foot roadway between these lots, which was mentioned in the terms of sale and shown on the plat, was later completed and hardsurfaced. The complainants used the easeway for approximately one year; but, after completion of the fifty-foot hardsurfaced road, the defendants attempted to close the thirty-foot easement, as shown on the plat, to complainants' use. This litigation is the result of that action.

It is the complainants' theory that Lot No. 7 was purchased pursuant to the printed announced conditions of the auction and the printed circular containing thereon the survey of the lots and depicting the thirty-foot easement. That the reference in complainants' deed to the recorded plat, which depicts the easement, is sufficient

description of complainants' easement to acquire the use thereof.

It is the defendants' theory first that they did not hear the announced conditions prior to the bidding regarding the thirty-foot easement being for the benefit of specific lots. Second, the terms of the sale were altered when the auctioneer induced him to make a higher bid on Lot No. 6, with the assurance that the easement would be merged and extinguished by the fact of single ownership of Lot Nos. 4, 5, and 6. That such statement was binding on the auctioneer and the vendor. Third, that any easement right that the complainants may have had over Lot No. 6 was one of necessity only, and was extinguished when the road on the east side of complainants' property was completed.

The Chancellor found in his Memorandum Opinion that the easement was intended to be one of necessity, and the complainants had convenient access to the new hard-surfaced road, thereby extinguishing the thirty-foot easement. The Chancellor further found that complainants' deed constituted the ultimate agreement between the vendor and vendee, and, since the deed did not expressly mention the easement, none was acquired by complainants. The Chancellor also found that there was no dedication of the thirty-foot easement by the recordation of the map or plat of said subdivision because the object and purpose of the thirty-foot easement ceased to exist when the fifty-foot public road along complainants' east line was completed. In the Final Decree, the Chancellor held that "the complainants' bill is not sustained by the proof and the original bill should be dismissed."

The complainants have filed eight Assignments of Error and we state them in essence as follows:

The Chancellor erred in holding:

## I.

That the complainants' bill is not sustained by the proof and the original bill should be dismissed.

## II.

That the thirty-foot easement was a temporary easement or an easement by necessity which was extinguished upon the completion of new roadway at rear of complainants' home.

## III.

That the new roadway was convenient to complainants.

## IV.

That the complainants were limited to the title and possession of only those premises set forth in the legal description on the deed they accepted.

## V.

That the fifty-foot road at the rear of complainants' property was for the use of Lot No. 7.

## VI.

That the Queeners' testimony regarding alleged statements of the auctioneer, tending to alter the announced conditions of the sale to obtain a higher bid on Lot No. 6, was admissible in evidence.

## VII.

That complainants were not entitled, as purchasers of lots sold from plat spread on record, to right of

user in easements materially beneficial and necessary to maintain the value of their lot.

## VIII.

That the Queeners were not estopped to deny the existence of the thirty-foot easement.

We deem it unnecessary to discuss each Assignment of Error separately, but all will be considered so far as we think are necessary for disposition of the cause.

The fact that an easement, of some sort, over lands of the defendants for complainants' benefit, actually existed at the time of the conveyances, cannot be and is not controverted. The graveled drive was there for all to see at the time of the auction sale. It was used by the complainants until they were prevented from using it by action of the defendants.

It must be admitted that if complainants failed to acquire any easement right by their deed, then they could only acquire an easement of necessity. Easements of necessity are extinguished when the need thereof fails. McGiffin v. City of Gatlinburg, 195 Tenn. 396, 260 S.W.2d 152.

We must first determine what easement right, if any, was acquired by complainants by their deed.

The Chancellor was of the opinion there was no dedication by the plat of the thirty-foot easement and, therefore, no easement was acquired by complainants by their deed; and relied, among others, upon the authority of Bunns v. Walkem Development Co., 53 Tenn.App. 680, 385 S.W.2d 917. The gist of the Bunns case, so far as applicable to this point of the instant case, is that there can be no dedication of property to private individuals

and a dedication must be for the benefit of the public. While it is true that ordinarily the recordation of a plat, which indicates roads or ways coupled with public usage or acceptance, is sufficient to constitute a dedication, the facts of the instant case are that, prior to recordation and at the time of sale, announcement was made that the thirty-foot easement as shown on the plat was for the benefit of Lot Nos. 4, 6 and 7. Therefore, use by others was by implication excluded. The complainants do not maintain that the subject easement is a public road, but allege it is a private way. Therefore, we conclude that the Chancellor was correct in holding there was no public dedication of the easement by virtue of the recordation of the plat. However, purchasers of lots by a plat reference can acquire easement rights independent of recordation of a plat or public dedication. In State v. Hamilton, 109 Tenn. 276, 70 S.W. 619, the complainant sought to have all streets as shown on a recorded plat kept open. Our Supreme Court found there had been no public dedication of the plat and limited relief ''to the opening of such streets, avenues and alleys as his lots abut on.''

Also, in *Bunns,* supra, the following statement was made by the Court:

''(11) Independent of dedication, which must be for the benefit of the general public, lot owners may acquire an easement or property right in streets or parks by reason of reference thereto in their deeds, *or by reason of a conveyance according to a plat which shows the existence of such facilities.* It was expressly so held by the Supreme Court in Goetz v. Knoxville Power & Light Co., 154 Tenn. 545, 290 S.W. 409, and,

quite recently, by this Court in Hudson v. Collier, 48 Tenn.App. 386, 348 S.W.2d 350, and in Baker v. Butler, 51 Tenn.App. 111, 364 S.W.2d 916, 922. Other cases to the same effect are: McKinney v. Davidson County, 194 Tenn. 689, 254 S.W.2d 975; Ridley v. Haiman, 164 Tenn. 239, 47 S.W. 2d 750; State ex rel. Kincaid v. Hamilton, 109 Tenn. 276, 70 S.W. 619; Wilson v. Acree, 97 Tenn. 378, 37 S.W. 90; Henderson v. Donovan, 81 Tenn. 289; Byington v. Bass, 11 Tenn.App. 569; and McCord v. Hays, 202 Tenn. 46, 302 S.W. 2d 331.'' (Emphasis supplied)

■ The complainants and defendants purchased their lots on the basis of the plat. In their deeds, the property is described by lot numbers shown on said plat, and being only more particularly described by metes and bounds. The defendants contend that since no easement right is mentioned in complainants' warranty deed, none was acquired by them. We cannot agree in this reasoning and cannot hold that, by adding a metes and bounds description after a lot number description pursuant to a plat, a successful elimination of rights or burdens created by plat is accomplished. Further, in the case of Perkins v. Ross, Court of Chancery Appeals of Tennessee, October 29, 1896, 42 S.W. 58, there was an injunction bill filed by Mrs. Perkins, seeking among other things to have an obstruction across an area between lots, one of which was owned by Ross and one by her, removed and which area in a partition proceedings had been set apart by certain Commissioners as McGhee Street, but which had never been opened and never used as an alley or a street or a public opening of any kind. Neither had the Report of the Commissioners ever been recorded or entered in any Court record. The Court in that case

even had to establish the location of the street and did so by its Decree, and then said:

> "The question now to be determined is one of law: Has the complainant the right to an injunction to restrain the defendant from using the street so occupied by him, or any other relief? It does not appear that this street was ever accepted by the city of Jellico or worked by it. However, it appears both from the deed of the complainant and from the deed of Trammel, under whom Robert Ross claims, that both of these deeds call for McGhee street. When such is the case, the abutting owners have each a property interest in the street, and the right to protect it by equitable interference."

Since we understand the law to be that conveyances by reference to a recorded plat is a sufficient description of the rights or facilities shown thereon to acquire interest therein, the deeds in the instant case, by reference and by inference, also described the easement.

In regard to this question of whether or not a conveyance by means of a plat reference is sufficient to convey an interest in rights or facilities shown thereon; we hold such a conveyance to be sufficient and the authorities as above cited by the Court in the *Bunns* case, supra, are equal authority for this point.

However, even if we are in error in the foregoing conclusions, we are of the further opinion that the defendants are estopped to deny that complainants acquire easement rights by virtue of the recorded plat, regardless of whether or not there has been a dedication of the easement in question. Both complainants and defendants were aware of the contents of the proposed

subdivision plat prior to purchase. Both observed the actual existence of the graveled drive, bid on the lots, and purchased same pursuant to the lot numbers shown thereon. The defendants purchased their lots with full notice of the actual existence of the drive and its existence as shown on the plat. All parties had knowledge of the contents of the plat and it was recorded before the deeds to the lots were executed and delivered. The auctioneer announced to all, including complainants and defendants, that the easement as shown on the plat was "for the use and benefit of Lots 4, 6 and 7." Regardless of whether or not defendant heard the announcement, he is presumed to have heard it and is burdened with the knowledge thereof. Whitfield v. May, 19 Tenn.App. 431, 89 S.W.2d 764.

Since we are of the opinion and therefore hold that an easement right was obtained by complainants by virtue of their deed, it must now be determined whether such easement was permanent or temporary and of necessity.

It must be recognized that the plat only describes the disputed area as "Easement". It contains none of the usual prefixes which would describe its purpose. Since this creates some ambiguity as to the nature of the easement, we must look to the announced terms of the auction sale. There was no mention by the auctioneer that the easement was of a temporary nature. There is certainly nothing on the plat to indicate that the easement was of a temporary nature. When property is sold by plat reference upon which ways and streets are shown, "There is an implied covenant that such ways exist *and shall continue to exist.*" (Emphasis supplied) 17A, Am. Jur., page 649, at sec. 39.

██ ██ The defendants ably argue that the easement was one of temporary necessity only and when the road on complainants' east line was completed, the necessity ended. The defendants correctly cite McGiffin v. City of Gatlinburg, supra, as authority for the proposition that when the need for an easement of necessity ends, so does the easement. However, the premise of defendants' argument depends upon the easement in question being one of necessity. The only "proof" of the easement being of necessity are the conclusions of the defendants. Counsel argues that it was the clear intention from the announcement of the auctioneer, regarding the possibility of the noncompletion of the road to the east of complainant, that the easement was to be used only if the east road was not completed. We respectfully disagree. The easement was also for the benefit of defendants' Lot No. 4, which lot had convenient ingress and egress to Fork Creek Road. The easement certainly could not be said to be of necessity for either Lot No. 4 or Lot No. 6. Also, it is to be noted that the announced terms of sale stated that the subject easement was reserved for the benefit of Lot Nos. 4, 6 and 7. A reservation is a matter of contract; not one of dedication, nor does it depend upon "necessity". It may have been incidentally of necessity for Lot No. 7 until the completion of the east road, but that fact does not make the easement per se of necessity, so as to be a condition for its existence. Nor, do we think these circumstances, heretofore set out, tend to show any intention on the part of the subdivider to create an easement of temporary necessity only in regard to Lot No. 7. The presumption is to the contrary. If this was the peculiar intent of the subdivider, such intent must be shown in a clear, unambiguous manner.

Therefore, we must disagree with the learned Chancellor in his conclusion that the thirty-foot easement was of a temporary nature and per se one of necessity.

 There yet remains the question of the effect of the auctioneer's alleged statement to the defendant that if the defendant purchased Lot No. 6, he would "get the easement with it".

In Whitfield v. May, supra, which is also cited in 7 C.J.S. Auctions and Auctioneer sec. 7 at page 1251, wherein this subject is discussed, the Court stated, "Printed conditions under which a sale proceeds are binding on both the buyer and seller, and cannot be varied, although they may be explained by verbal statements of the auctioneer made at the time of the sale." citing 6C.J., pages 827-828. The plat in the instant case constituted a "printed condition". See also Moore v. Berry, 40 Tenn.App. 1, 288 S.W.2d 465. In the case now before us, the record is devoid of any proof that the owner of the land, at any time, authorized or approved any modification or change in the printed or announced condition of sale. Therefore, we find that the evidence preponderates against a finding that the auctioneer modified the terms or conditions of sale.

In the light of the entire record, we conclude that the proof preponderates against the Decree of the learned Chancellor, and the complainants are entitled to have the use of the thirty-foot easement. A Decree will be entered sustaining the Assignments of Error, setting aside the Decree of the Chancellor, and granting injunctive relief, so that the defendants shall be perpetually enjoined from blocking the use of the thirty-foot easement as shown on the Map of the Mrs. J. W. Lockett Sub-

division and bounding complainants' property on the west.

The costs of this Court and the Court below are against the defendants. Decree accordingly,

Carney, P. J., and Matherne, J., concur.

See Appendix on next page.

APPENDIX

507

MRS. J. W. LOCKETT PROPERTY - SEC.

DISTRICT 4, LOUDON COUNTY, TENNESSEE

AUGUST 10, 1967
CERTIFICATE OF SURVEY
I hereby certify that I made this survey
and map and that both are correct to
the best of my knowledge.

BOUNDARY SURVEY BY GUY CRAWFORD.
HWY ROW SUBJECT TO OFFICIAL SURVEY

— LOCATION MAP —