IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE
_____

**FLORA SCRUGGS,**

    Plaintiff-Appellee,

Vs.

                      Rutherford Chancery No. 93CV-464
                      C.A. No. 01A01-9610-CH-00475

**GORDON BELL,**

    Defendant-Appellant.

FROM THE RUTHERFORD COUNTY CHANCERY COURT
THE HONORABLE ROBERT E. CORLEW, III, CHANELLOR

Frank M. Fly of Murfreesboro
For Appellant

David W. Kious and Robert O. Bragdon of Murfreesboro
For Appellee

*REVERSED AND REMANDED*

Opinion filed:



**FILED**

**May 9, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

    This case involves a dispute concerning an easement for ingress and egress.

Respondents-Appellants, Gordon Bell and Sarah T. Bell, appeal from the order of the trial court

granting an easement by estoppel to Petitioner-Appellee, Flora Pope Scruggs[1], without compensation to the Bells.

In 1970, Scruggs purchased 35 acres of unimproved land in rural Rutherford County.[2] The land did not front a public road, but it had a connection to a public road by Old New Cut Road[3], an old dirt road that crossed the neighboring property. Scruggs's deed did not provide for any type of easement over the other property.

In 1981, the Bells purchased 10 acres of land west of Scruggs's property with the center line of Old New Cut Road as its southern boundary, and in 1987, the Bells purchased an additional 23.2 acres on the other side of Old New Cut Road with the center line of the road as its northern boundary. Old New Cut Road bisects the Bells' properties. Neither of the Bells' deeds is subject to an easement in favor of Scruggs.

Old New Cut Road is described as a 10-foot wide dirt road full of potholes with tree branches hanging into the road bed that would scratch vehicles and break their side mirrors. Scruggs used Old New Cut Road to haul firewood from her property even though it would damage her truck. She and her sons cut the tree limbs back and laid flat rock in the road bed to try to prevent some of the damage. Other nearby landowners also used the road to access their properties. One landowner testified that he thought it was an old county road and was not owned by anybody. In a 1975 survey, Old New Cut Road was described as "old dirt road (not used)." The road has been used since 1970, but was not maintained by the county.

Scruggs moved a house onto her property using Old New Cut Road. She had to cut down a few trees to move the house. Scruggs wanted to complete further improvements to her property, including electricity, gas, water, and phone service. Gordon Bell never prevented Scruggs from using the road nor did he ever restrict her use. However, in 1991, Scruggs cleared

---

[1] On October 24, 1995, Flora Scruggs transferred the property by quitclaim deed to her husband, John T. Scruggs, Sr. On January 23, 1996, the trial court entered an order substituting John T. Scruggs, Sr. in place of Flora Scruggs as the proper party in interest. However, because the trial court and the parties have continued to refer to the petitioner as Flora Scruggs, we will do likewise.

[2] Scruggs actually purchased the land with John T. Scruggs, Sr. In 1982, John T. Scruggs, Sr. conveyed his interest in the land to Flora Scruggs making her the sole owner until she conveyed it back to him in 1995.

[3] Old New Cut Road is referred to throughout the record as Old New Cut Road, New Cut Road, Triune, and Salem Road, or old dirt road. In this opinion, we will call the road "Old New Cut Road."

an area along Old New Cut Road with a bulldozer without Bell's permission.[4] On July 2, 1991, Gordon Bell sued Scruggs for damages resulting from the bulldozing and for an order to permanently prohibit Scruggs from entering his land. The general sessions court entered a judgment for Gordon Bell against Scruggs for $6,925.00. Scruggs appealed to the circuit court, but all issues were settled before trial.

On May 17, 1993, Scruggs filed a petition in chancery court seeking to establish an easement or, in the alternative, to establish her right to a statutory easement for ingress and egress pursuant to T.C.A. § 54-14-101 (1993).[5] In the petition, Scruggs avers that she has an existing easement for ingress and egress over Old New Cut Road and that she is being denied free access by the Bells. She avers that the Bells are denying her the right to have utility service to her property unless she pays them a substantial sum of money. She avers that she should not be restricted in her use of Old New Cut Road and that the Bells should be enjoined from interfering with her free access.

The petition prays that the court find an existing right-of-way over Old New Cut Road that allows Scruggs free access to her land and an existing easement for ingress and egress over Old New Cut Road. Further, Scruggs prays for a finding of an existing easement by implication for the extension of utility services along Old New Cut Road. In the alternative, Scruggs requests an easement for ingress and egress pursuant to T.C.A. § 54-14-101 and for any additional land that would be necessary for extension of utility service. Finally, Scruggs demands an injunction against the Bells preventing them from interfering with her use of Old New Cut Road.

On June 20, 1993, Gordon Bell filed an answer to the petition denying that he was preventing Scruggs from using Old New Cut Road. He also denied that an easement or right-of-way already existed. On October 13, 1994, Sarah T. Bell filed an answer to the petition denying the material allegations of the petition and asserting an affirmative defense of res judicata because of the Bells' 1991 suit against Scruggs. Gordon Bell filed a motion to dismiss based on the doctrine of res judicata, but the trial court denied both the motion and his request for an

---

[4] The road bed is about 12 feet wide, and the cleared swath next to the road is about 33 feet wide.

[5] On September 16, 1994, Scruggs filed another petition that merely added Sarah T. Bell, Gordon Bell's wife, as a respondent.

interlocutory appeal.

On June 13, 1995, the case was tried before the chancery court sitting without a jury. On August 24, 1995, the trial court entered an order granting Scruggs a 45-foot wide easement across the Bells' property consisting of a 15-foot wide easement for ingress and egress and a 30-foot wide easement for utilities. The court took under advisement the issue of the easement's location and the issue of payment to the Bells. On September 15, 1995, the trial court filed an opinion outlining its decision, and on May 23, 1996, the trial court entered a final order that incorporated the August 24 order and the September 15 opinion. The trial court granted Scruggs an easement by estoppel consisting of the 15-foot wide ingress and egress easement and the 30-foot wide utility easement. The ingress and egress easement was not compensable to the Bells, but the utility easement was compensable. The parties agreed to both the location of the easements and the value of the utility easement.

The Bells appeal the order of the trial court and present two issues for review: 1) whether the present suit is barred by the doctrines of res judicata and collateral estoppel; and 2) whether Tennessee law allows the gratuitous conversion of a permissive use into an easement by estoppel.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

In the first issue, the Bells argue that the general sessions court in the Bells' 1991 suit against Scruggs impliedly found that Scruggs did not have an easement because the court awarded damages to the Bells. They argue that if she had an easement, then she would have had a right to bulldoze the trees, and therefore, the court would not have entered a judgment against her. The Bells claim that Scruggs should have presented the issue of an easement in a counterclaim in the first suit.

Scruggs filed an affidavit of Royce Taylor, her attorney in the earlier suit, which was apparently considered by the trial court without objection from the Bells. The affidavit states that the first suit dealt only with damages to the Bells' land and that no ruling was made about an easement because no ruling was requested by either party. According to Taylor, the trial court

4

ruled that Scruggs had damaged the Bells' property beyond the road and enjoined her from coming back onto the Bells' property. However, the ruling did not prevent her from using the road.

A judgment on the merits exhausts the cause of action on which it was based and is an absolute bar to a subsequent suit between the same parties and their privies upon the same cause of action. *Madyun v. Ballard*, 783 S.W.2d 946, 948 (Tenn. App. 1989). Res judicata operates to bar a claim when a prior judgment in an action between the same parties on the same cause of action concludes not only the facts actually litigated, but the facts pertaining to that issue that might have been brought forth and litigated. *Harrogate Corp. v. Systems Sales Corp.*, 915 S.W.2d 812, 816 (Tenn. App. 1995).

Res judicata bars a second suit between the same parties and their privies on the same cause of action as to all issues that were or could have been litigated in the former suit. Collateral estoppel operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues that were actually litigated and determined in the former suit. To support a plea of res judicata, it must be shown that the judgment in the prior case was final and concluded the rights of the party against whom it is asserted. It is also necessary to show that both cases involved the same cause of action. To sustain a plea of collateral estoppel it must be shown, *inter alia*, that the issue sought to be concluded not only was litigated in the prior suit but was necessary to the judgment in that suit. *Massengill v. Scott*, 738 S.W.2d 629, 631-32 (Tenn. 1987) (citing 22 Tenn. Jur. *Res Judicata* § 4 (1985)).

One defending on the basis of res judicata or collateral estoppel must demonstrate that 1) the judgment in the prior case was final and concluded the rights of the party against whom the defense is asserted, and 2) both cases involve the same parties, the same cause of action, or identical issues. *Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995).

In the case at bar, the Bells have simply failed to prove that this case and the earlier case involved the same causes of action or identical issues. This issue is without merit.

In the second issue, the Bells assert that the trial court misapplied the law and that the grant of an easement by estoppel was not appropriate under the facts of this case. The Bells complain only about the easement for ingress and egress, not the utility easement. Furthermore, the Bells do not object to an easement for Scruggs. Their real objection is that Scruggs did not

5

have to pay for the easement for ingress and egress. To determine the validity of this objection, we must determine if Scruggs is entitled to an easement for ingress and egress over the Bells' property.

In its September 15, 1995 opinion, the trial court examined each type of easement in light of the facts of this case. The trial court initially found that neither an express easement nor an easement by dedication existed in this case. We agree. An express grant of an easement is an irrevocable license to enter upon land of another and must be in writing. *Childers v. William H. Coleman Co.*, 122 Tenn. 109, 126 (1909). A dedication is found where the owner of land sets apart a portion of his land by agreement, either for compensation or gratuitously. *Smith v. Black*, 547 S.W.2d 947, 950 (Tenn. App. 1976). It is clear from the record that none of the deeds involved contained an express grant of an easement in favor of Scruggs and that the parties never made a separate agreement concerning an easement.

The trial court next concluded that an easement by prescription was not established because Scruggs's use of Old New Cut Road through the Bells' property was permissive. Twenty years of adverse use is required to establish a prescriptive easement. *Keebler v. Street*, 673 S.W.2d 154, 156 (Tenn. App. 1984). "The use and enjoyment which will give title by prescription to an easement . . . must be adverse, under claim of right, continuous, uninterrupted, open, visible, exclusive, and with the knowledge and acquiescence of the owner of the servient tenement, and must continue for the full prescriptive period . . . ." *Id.* (quoting *House v. Close*, 346 S.W.2d 445, 447 (Tenn. App. 1961)). An easement by prescription may not be obtained where the use is permissive. *City of Whitwell v. White*, 529 S.W.2d 228, 230 (Tenn. App. 1974). The owner of the servient estate may defeat the claimant's right of prescription by testifying that he never objected to the claimant using the road regardless of for how long a period. *German v. Graham*, 497 S.W.2d 245, 248 (Tenn. App. 1972).

In this case, there is a dispute about permission. Scruggs claims that she asked only permission to cut the trees along Old New Cut Road because she felt that she was entitled to use the road itself. However, the Bells characterize the request for permission as a request to use and improve the road. Regardless, Gordon Bell testified that he had never prevented nor objected to Scruggs using Old New Cut Road. From our review of the record, we conclude that the evidence does not preponderate against the trial court's finding that there is no easement by

prescription in favor of Scruggs.

The trial court also found that an easement by prescription for a public way could not be established. The evidence shows that the public used Old New Cut Road for many years, but there is no proof that Old New Cut Road was ever a county maintained road. The trial court found that the use of the road was not continuous for a period of 20 years or more and that the use was permissive or with the permission of the landowners whose land abutted the road.

It is long settled law that a public way may be established by evidence of adverse use for a long period of time, without any express dedication, if it is shown that the use is under a claim of right, and not merely permissive. Mere permissive use is not sufficient to establish a dedication. *Lewisburg, Tennessee v. Emerson*, 5 Tenn. App. 127, 132 (1927). To establish a dedication by implication, there must be proof of facts from which it positively and unequivocally appears that the owner intended to part permanently with his property and vest it in the public, and there can be no other reasonable explanation of his conduct. *Id.* The evidence does not preponderate against the trial court's finding that Old New Cut Road is not a public way.

The trial court next concluded that Scruggs did not have an easement by implication because there was no evidence of unity of title. It is the policy of our law to restrict the doctrine of implied easements because they are not favored in the law. *Cole v. Dych*, 535 S.W.2d 315, 318 (Tenn. 1976). Implied easements are founded upon conveyances and are premised upon the presumption that they were within the contemplation of the parties and must be supported by unity of title. *Id.* We find that the evidence does not preponderate against the findings of the trial court concerning an implied easement. We note that the trial court did not specifically consider an easement by necessity because such an easement is a type of implied easement that requires unity of title. A way of necessity is dependent upon an implied grant and cannot exist where there never was any unity of ownership of the alleged dominant and servient estates, for no one can have a way of necessity over the land of a stranger. *Emerson*, 5 Tenn. App. at 134.

Finally, the trial court turned to easements by estoppel. In its opinion, the trial court stated,

> The Court recognizes that easements by estoppel also are not
> favored under the law, and, where the Court is able to do so,
> courts even struggle, perhaps, to find an easement by prescription,

7

rather than easements by estoppel. *See, House v. Close, supra* at 449; *Jones v. Ross*, 388 S.W.2d 640, 646 (Tenn. Ct. App. 1964) *cert. denied*. Generally estoppel is available only to protect a right that previously existed, but not to create a new right. *E.K. Hardison Seed Company v. Continental Casualty Company*, 410 S.W.2d 729, 733 (Tenn. Ct. App. 1966) *cert. denied* 1967. It was on this basis, that at least one court has held that an estoppel is insufficient to establish the existence of an easement. *Charles N. McDowell v. Carol Ratcliff and Ellen Ratcliff*, [unpublished] 1992 W.L. 328707, 92 Lexis 929 (Tenn. 1992)[sic], Appeal No. 03A01-9206CH00225 -- Eastern Section, November 12, 1992.

The trial court then stated that this case was different from *McDowell* and that easements by estoppel should be recognized in order to prevent gross injustice from occurring. The trial court analyzed the facts of this case using the elements of equitable estoppel as stated in *Callahan v. Town of Middleton*, 292 S.W.2d 501 (Tenn. App. 1954), and concluded that this was "an appropriate case for the recognition of the existence of an easement." The trial court stated, "The easement then being recognized by the Court under the principle of estoppel, the Court finds the easement to have previously existed. The easement, then, being in existence prior to the commencement of the lawsuit, the Court, then, should not assess damages or compensation in favor of the Defendant for the taking of the land for the purpose of the easement."

We believe that an easement by estoppel cannot be found in this case for two reasons. First, in *Callahan*, this Court applied the elements of equitable estoppel to the issue of an easement by estoppel and stated:

> The essential elements of an equitable estoppel as related to the party estopped are said to be (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts. As related to the party claiming the estoppel they are (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially.

*Callahan*, 292 S.W.2d at 508 (quoting 19 Am. Jur. *Estoppel* § 42 at 642-43). In the case before us, the trial court stated, "[I]t appears to the Court that a false impression was provided to the Scruggs." We believe that the evidence preponderates against this finding of the trial court. The record does not disclose any false misrepresentations or conduct that gives rise to a false impression on the part of the Bells. We believe that the Bells are not estopped from denying the

8

existence of an easement because Scruggs cannot show that the elements of an equitable estoppel have been met.

Second, the trial court stated that a number of courts have expressly recognized the existence of the finding of an easement by estoppel, citing *Moore v. Queener*, 464 S.W.2d 296 (Tenn. App. 1970). In *Moore*, the plaintiffs sued the defendants to keep an easement open across the defendants' land. The easement was recorded in a plat of the subdivision, but the deeds were silent as to the existence of the easement. *Id*. at 299. However, the deeds referenced the recorded plat. *Id.* In addition, the easement was an announced condition to the purchase of the land during the auction of the subdivision's lots. The Court stated, "The fact that an easement, of some sort, over the lands of the defendants for complainants' benefit, actually existed at the time of the conveyances, cannot be and is not controverted." *Id*. at 300. The Court held that the plaintiffs were entitled to an easement by their deed and that the defendants were estopped to deny the existence of the easement because they had notice of the easement from the recorded plat and the announced conditions. *Id*. at 302.

Reliance on *Moore* is misplaced. In *Moore*, the Court did not create an easement using estoppel, it merely estopped the defendants from denying that one already existed. Estoppel is available to protect a right, but never to create one. *E.K. Hardison Seed Co. v. Continental Cas. Co.*, 410 S.W.2d 729, 733 (Tenn. App. 1966). In the present case, the trial court carefully examined each way that an easement could be created and concluded that Scruggs did not have an easement. The trial court rejected an express easement, a prescriptive easement, and an implied easement. However, the trial court granted Scruggs an easement by estoppel and said, "[T]he Court finds the easement to have previously existed."

We conclude that the evidence preponderates against the findings of the trial court that there is an easement by estoppel.

Finally, Scruggs argues that abutting landowners have the right to use abandoned roads touching their property. *See Current v. Stevenson*, 116 S.W.2d 1026 (Tenn. 1938). This argument must also fail because there is no proof that the road was a public way, and the trial court expressly so found. Thus, there could be no abandonment.

Scruggs sought alternatively for the Court to provide ingress and egress pursuant to T.C.A. § 54-14-101 and 102 (1993). The Bells conceded in the trial court that they did not

object to such an easement if they were properly compensated as provided by the statute.

Accordingly, the order of the trial court granting Scruggs an easement by estoppel is reversed, and the case is remanded for further proceedings to establish a way of ingress and egress pursuant to T.C.A. § 54-14-102 (1993).  Costs of appeal are assessed against the appellee.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**


_____
**ALAN E. HIGHERS, JUDGE**


_____
**HOLLY KIRBY LILLARD, JUDGE**

10