IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 4, 2023

# JOHN HURON ET AL. v. VLADIMIR KRUGLYAK ET AL.

**Appeal from the Chancery Court for Sullivan County (Bristol)**
**No. 18-CB-26634        John S. McLellan, III, Chancellor**

———————————

### No. E2022-01812-COA-R3-CV

———————————

In this easement dispute involving a shared driveway between adjoining real property owners, the petitioners filed an action for declaratory judgment, alleging that the respondents had interfered with their use of the driveway and requesting that the court declare the "rights and obligations of the parties." Acting without benefit of counsel, one of the two respondents filed a response opposing the petition and subsequently filed a motion for summary judgment asserting multiple counterclaims. The trial court dismissed the respondent's counterclaims in an order not included in the appellate record. The trial court conducted a bench trial, during which all parties were represented by counsel. At trial, the petitioners sought an implied easement and an easement by necessity. The trial court determined, *inter alia*, that the parties had shared driveway easements and that the petitioners had carried their burden to prove an implied easement and an easement by necessity. The court included in its judgment parking limitations on the parties' use of the shared driveway. The respondent who initially filed pleadings *pro se* has appealed, again acting without benefit of counsel. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ARNOLD B. GOLDIN, J., joined.

Vladimir Kruglyak, Bristol, Tennessee, Pro Se.

A.D. Jones, Jr., Bristol, Tennessee, for the appellees, John Huron and Sandra Huron.

**OPINION**

I. Factual and Procedural Background

This dispute involves a shared driveway ("the Driveway") that serves two adjoining parcels of improved real property located on Windsor Avenue in Bristol, Tennessee. On March 26, 1992, the petitioners, John Huron and Sandra Huron, a married couple, obtained title to one of the parcels via warranty deed. On December 30, 2003, the respondents, Vladimir Kruglyak and Nataliya Kruglyak, who are brother and sister, obtained title to the adjoining parcel at issue via warranty deed.[1] The Hurons' deed included the following provisions related to easements:

> The property herein conveyed is transferred subject to all easements, rights-of-way, restrictions and conditions which are duly of record, or which are visible, or of which the grantees otherwise have knowledge, and which are presently binding and affect the subject property.

> There is also conveyed herewith all rights, easements and rights-of-way which exist for and benefit the above described property.

The Kruglyaks' deed included the following relevant provisions:

> There is also conveyed herewith such rights as exist to use the driveway which served the abovedescribed property and adjacent property.

> * * *

> This conveyance is made subject to all covenants, conditions and restrictions in prior instruments of record and to any easements apparent from an inspection of said property.

As noted by the trial court in its final order, the parties stipulated at trial that "the common driveway between the two parties was created through a common source of title between the properties by Deed of G. W. Keesling and wife, Ethel Keesling in March of 1940." All surveys presented as attachments to pleadings and as exhibits indicated that

---

[1] In its final order, the trial court stated that the Kruglyaks were husband and wife, which is how they were described in the Hurons' petition. However, the Kruglayks' deed to their property indicates that both Mr. Kruglyak and Ms. Kruglyak were unmarried at the time they purchased the property. According to the statement of the evidence, Mr. Kruglyak testified at trial that Ms. Kruglyak is his sister, and he subsequently submitted an affidavit to this Court stating the same.

the parties' boundary line runs approximately through the center of the Driveway. All deeds presented in the Hurons' and the Kruglyaks' chains of title were duly recorded with the register of deeds.

On December 12, 2018, the Hurons filed a petition for declaratory judgment in the Sullivan County Chancery Court at Bristol ("trial court"), naming the Kruglyaks as respondents and alleging that the Kruglyaks had interfered with the Hurons' use of the Driveway. The Hurons averred that the Kruglyaks did not occupy their Windsor Avenue property full time until approximately August 2015 and that in 2012, the Kruglyaks had offered to sell their portion of the shared driveway to the Hurons for $6,240.00, which the Hurons declined to pay. According to the petition, the Kruglyaks sent an invoice to the Hurons in August 2015, requesting payment for parking fees in the total amount of $7,995.00, or $97.50 per month per vehicle for forty-one months, which the Hurons also declined to pay. The Hurons averred that the Kruglyaks then "posted a No Trespassing Sign and a No Parking Without Permit sign on [the Hurons'] vehicles." On November 19, 2015, the Kruglyaks allegedly dispatched a "wrecker" to tow one of the Hurons' vehicles from the Driveway, but when a police officer arrived at the scene, the tow truck driver declined to transport the vehicle. The Hurons further alleged that on December 10, 2015, the Kruglyaks notified the Bristol Police Department that a vehicle had been abandoned on their property and placed "an orange abandoned car sticker" on the Hurons' vehicle.

According to the Hurons' petition, the Kruglyaks did not occupy their property again full time until 2018. In July 2018, the Kruglyaks purportedly "placed a metal stake and no trespassing sign in the middle" of the Driveway. The Hurons alleged that although the Kruglyaks had a second accessible entry to their property via an asphalt parking pad in their backyard, which had been installed by the Kruglyaks' predecessors in title, the Kruglyaks continued to deny the Hurons access to the Driveway. The Hurons requested that the trial court issue a judgment "declaring the rights and obligations of the parties" and an injunction prohibiting the Kruglyaks from denying the Hurons access to or impeding their use of the Driveway.

On January 2, 2019, Mr. Kruglyak, acting without benefit of counsel, filed a pleading entitled, "Respondents' Opposition to the Petition for Declaratory Judgment, Affirmative Defenses, and Counterclaims."[2] Mr. Kruglyak stated a blanket denial of all

---

[2] During the trial court proceedings, Mr. Kruglyak filed several pleadings on behalf of himself and Ms. Kruglyak. However, Mr. Kruglyak is not a licensed attorney and therefore cannot represent anyone's interests other than his own in this matter. *See Vandergriff v. ParkRidge E. Hosp.*, 482 S.W.3d 545, 554 (Tenn. Ct. App. 2015) ("Proceedings in a suit by a person not entitled to practice law are a nullity, and '[a]n attempted appeal of a person not licensed to practice law, purporting to represent another, will be dismissed.'" (quoting *Bivins v. Hosp. Corp. of Am.,* 910 S.W.2d 441, 447 (Tenn. Ct. App. 1995))).

allegations in the petition. However, he did acknowledge placing an "iron stick" in the middle of the Driveway, maintaining that the iron stick was "not a permanent structure and [could] be easily removed and put back in within five minutes by any person without any tools." Acknowledging the existence of the easement in his deed for the adjoining property owners' use of the Driveway, Mr. Kruglyak contended that the Hurons had been using the Driveway as a parking lot rather than a driveway. He alleged that the Hurons' misuse of the Driveway had interfered with the Kruglyaks' quiet enjoyment of their property, "forced" them to relocate and attempt to rent out their property, caused tenants to refuse to pay rent, created "tax and mortgage liability that resulted in [the Kruglyaks'] filing for bankruptcy," and increased their mortgage debt by $14,000.00 to pay off a property tax liability. Mr. Kruglyak further alleged that the Hurons or their guests had caused damage to the Kruglyaks' retaining wall by parking their vehicles on the Driveway near the wall.

Mr. Kruglyak requested that the trial court deny the Hurons' petition for declaratory judgment with prejudice, amend the Kruglyaks' deed to eliminate the "servitude clause" related to the Driveway, and enter a monetary judgment in the amount of $139,000.00 in favor of the Kruglyaks with a lien *lis pendens* attached to the Hurons' property. In support of his request for a monetary judgment, Mr. Kruglyak asserted "counterclaims" of "[d]amages due to loss of revenue resulted from illegal parking" in an amount no less than $139,000.00 and "[d]amages due to breach of [quiet] enjoyment and emotional distress." As what he termed affirmative defenses, Mr. Kruglyak maintained that (1) the Hurons had at all times been able to access the Driveway, (2) the Hurons had again used the Driveway as a parking lot despite the fact that the Hurons had "gained entrance" to the Driveway after the Hurons' former attorney corresponded with the Kruglyaks in 2015,[3] (3) the "iron stick" placed by the Kruglyaks could be easily removed, (4) the Hurons had "forcefully and illegally converted" the Driveway into a parking lot, and (5) the Hurons' parked vehicles had also disturbed other individuals' quiet enjoyment. Requesting judgment on the pleadings, Mr. Kruglyak concomitantly filed a "Motion for Leave to Alter or Amend the Deed and Remove Servitude."

In its final order, the trial court noted that it had previously entered an order on June 19, 2019, "prevent[ing] the parties from blocking" the Driveway and directing them "to keep all access open pending the trial of this case." The June 2019 order is not in the

---

[3] Mr. Kruglyak attached to his January 2019 response a letter from the Hurons' former counsel, Luther H. Icenhour, Jr., to the Kruglyaks, dated November 24, 2015, requesting that the Kruglyaks "immediately remove the stake in the center of the driveway and cease interfering with the Huron[s'] right to use the same." Mr. Icenhour warned that a civil action would be filed if the Kruglyaks did not remove the stake within ten days.

appellate record, and it is not clear whether a specific pleading or hearing prompted the order's entry.

On July 25, 2019, Mr. Kruglyak filed a pleading entitled, "Affidavit of Vladimir Kruglyak and Additional Counterclaims with Exhibits thereto in Support of Respondents' Motion for Summary [Judgment]." However, although Mr. Kruglyak included a statement that he would need at least one year prior to trial to retain counsel and an expert engineering witness if his motion for summary judgment were denied, no motion for summary judgment was filed concomitant with this pleading. Mr. Kruglyak set forth the following additional "counterclaims": (1) "tort of nuisance due to long-term parking and afterhours noise by the vehicles within 3-4 feet of [the Kruglyaks'] windows"; (2) invasion of privacy "by driving over and stepping onto [the Krugylaks'] entry stairs next to their entry doors and windows and by placing [a] camera pointed on [the Kruglyaks'] bathroom window"; (3) damages in the amount of at least $25,000.00 due to "heavy vehicles being parked long-term within just four feet from the foundation of [the Kruglyaks'] house"; (4) reckless conduct, citing the criminal definition of "reckless" provided in Tennessee Code Annotated § 39-11-302(c); (5) expenses and lost employment time in the total amount of $10,800.00; and (6) unspecified "punitive damages and sanctions."

On August 9, 2019, Mr. Kruglyak filed an "Amended Motion for Summary Judgment," asserting that no "genuine issue of material facts . . . entitle[d] [the Hurons] to trial." Mr. Kruglyak reiterated that his deed granted an easement to the adjoining property owners for use of the Driveway only as a driveway and not as a parking lot. He requested "punitive, compensatory, and all other damages incurred due to increased burden and intensity on the easement"; monetary judgment on his counterclaims with enforcement of a lien *lis pendens*; "amend[ment]" of the deeds to remove the easement or a permanent injunction extinguishing the easement; and fees and costs. Mr. Kruglyak reiterated his request that if summary judgment were not granted, the trial should be "postponed" to allow him time to retain counsel and an expert witness in structural engineering. Mr. Kruglyak subsequently filed a "Statement of Material Facts as to which There is No Genuine Issue to be Tried."

Among the exhibits Mr. Kruglyak attached to his "amended" motion for summary judgment were copies of deeds in the Hurons' chain of title and a copy of a survey of the Kruglyaks' property. A deed executed on June 24, 1991, conveying what is now the Hurons' property to Carl C. and Karen L. Clemons from Susan Elizabeth Emmert, Marilyn McDonnell, and Thomas Edward McDonnell, contained the following easement provision:

This conveyance is made subject to any and all covenants and restrictions appearing of record in the chain of title, and all visible or recorded easements.

A deed dated March 7, 1940, conveying what is now the Hurons' property to Carl H. Emmert and Mary K. Emmert from the Keeslings contained no easement language. The survey, which was dated July 20, 1994, included the following "Note": "There is apparent joint use of driveway between this and adjacent property."

The trial court apparently entered an order on August 13, 2019, dismissing the Kruglyaks' counterclaims with prejudice upon the Hurons' motion asserting a misjoinder of tort claims with the original declaratory judgment action. Neither the Hurons' motion requesting dismissal nor the trial court's August 2019 order is in the record. However, purportedly acting through attorney John E. Kieffer, the Kruglyaks filed a "Motion for Amendment of Judgment" on September 4, 2020.[4] In the motion, the Kruglyaks asserted that dismissal of the counterclaims was based on procedural grounds and should therefore have been without prejudice. The Kruglyaks requested that the trial court amend the August 2019 order to either dismiss the counterclaims without prejudice or reinstate them.[5]

On January 12, 2022, the Kruglyaks filed a "Structural Evaluation" that had been completed on their property by Allen Browning, a field service engineer. In his evaluation, Mr. Browning stated his observations of cracking and settlement on the property and of water seepage into the basement. Upon making recommendations for repairing the damage, Mr. Browning expressly did not make a determination as to the parties responsible for the observed damage; instead, he recommended "a full geotechnical evaluation" if such a determination were needed. The Kruglyaks also filed a survey of their property completed in May 2021 along with various photographs.

---

[4] The motion to amend the August 2019 order included Mr. Kieffer's name and contact information but not his signature. No notice of representation is in the record.

[5] In his appellate brief, Mr. Kruglyak states that he was served with two notices of contempt for, respectively, failure to pay $500.00 in attorney's fees and for allowing a guest to park in the Driveway. According to Mr. Kruglyak, the trial court gave him a "last warning before arrest" during a hearing conducted on August 13, 2019. However, because the record contains no petitions for contempt, notices of contempt, or orders addressing contempt, we are unable to review Mr. Kruglyak's statements regarding contempt allegations and what he terms in his issue statement an "abuse of judicial powers" in this regard. We emphasize that this Court reviews the record on appeal as it is filed by the trial court, *see* Tenn. R. App. P. 13(c), and that it is the appellant's responsibility to provide this Court with a sufficient appellate record from which this Court can conduct a review of the trial court proceedings. *See Tarpley v. Hornyak*, 174 S.W.3d 736, 740 (Tenn. Ct. App. 2004).

The trial court conducted a bench trial on September 12, 2022.[6]  All parties were represented by counsel at trial with Mr. Kieffer appearing for the Kruglyaks.  The court heard testimony from Mr. Huron, Ms. Huron, and Mr. Kruglyak.  The parties presented stipulated exhibits consisting of the deeds in the Hurons' chain of title, the deeds in the Kruglyaks' chain of title, a February 2005 survey of the Hurons' property inclusive of the Driveway, a May 2021 survey of the Kruglyaks' property inclusive of the Driveway, and an aerial satellite image of the properties involved.  The Hurons presented photographs of the area alleged by Mr. Kruglyak to be an alternative access to the Hurons' property.  The Kruglyaks presented photographs showing the Hurons' vehicles parked in the Driveway and Mr. Huron's truck parked on Windsor Avenue, as well as photographs purporting to show the claimed damages to their property.

The trial court entered an order on December 9, 2022, determining that the Hurons had "carried their burden of proof as to an easement by implication and an easement by necessity."  Concerning whether either the Hurons or the Kruglyaks had a second access to their respective properties, the trial court particularly noted the Hurons' testimonies and exhibits as follows:

> [The Hurons] testified and have introduced photographs as Exhibits showing the installation of a second access from [Old Knob Road][7] to their property which would not be possible to access due to the steep terrain and incline.

> [The Hurons] testified that [the Kruglyaks'] predecessor in title installed an asphalt parking pad in the back of [the Kruglyaks'] property which is accessible from Old Knob Road giving the property owner of [the Kruglyaks' property] a second accessible entry to their property.

(Citations to record and paragraph numbering omitted.)

The trial court further found:

---

[6] On appeal, Mr. Kruglyak asserts that he requested a jury trial.  However, the appellate record contains no indication of such a request and no indication that Mr. Kruglyak's counsel objected to a bench trial.

[7] Old Knob Road was known in early deeds as "Knobs Road" or sometimes "Old Knobs Road."  Although the trial court sometimes referred to the road as "Knob Hill Road" in its final order, the record indicates that Old Knob Road was the only road at issue that ran behind the properties.  For ease of reference, we have substituted "Old Knob Road" in brackets where the trial court referred to "Knob Hill Road."

The Court finds that [the Hurons] are unable to access their property off [Old Knob Road] and that they are prevented from being able to drive onto the driveway up to the rear entrance to enter or unload items such as groceries as the back of their lot is a steep incline which is visible in the exhibits entered in this matter. Because of the small inclined area at the rear of their property, in order to access their property would necessitate climbing and/or descending additional steep steps to gain access to their rear door, which due to [the Hurons'] age and health condition is not feasible.

The court expressly found that the Hurons had "failed to prove an easement by prescription."

Upon concluding that the Hurons had established an easement by implication and necessity, the trial court issued the following specific directions to the parties regarding the use of the Driveway:

The Court finds that the driveway sharing easements are that the owners of the adjoining properties involved in this litigation and/or their tenants, occupants, or designee[s] shall have the right to drive vehicles up and down the driveway and to stop for a period no longer than one hour at any location of the driveway temporarily for purposes of loading or unloading property or passengers and/or for the use by temporary service vehicles such as electricians, plumbers, yard workers, etc. while performing their services and that except for such service people while performing their services, no person shall park a vehicle over night.

Mr. Kruglyak timely appealed, once again acting *pro se*.[8] Although he named only himself as an appellant, Mr. Kruglyak included Ms. Kruglyak in the style of his notice as one of the "Respondents-Appellants." Mr. Kruglyak did not file a trial transcript. However, he did timely file a statement of the evidence pursuant to Tennessee Rule of Appellate Procedure 24(c). The statement includes a certificate of service to the Hurons' counsel, who filed no objections to it. The record contains no indication that the trial court reviewed or approved Mr. Kruglyak's statement of the evidence.

During the pendency of this appeal, Mr. Kruglyak filed in this Court a "Motion to Convert the Existing Appeal to the Extraordinary Appeal under T.R.A.P. 10(a)," also filing a brief with several appendices attached that included documents not presented to the trial court and not in the appellate record. In an order entered on June 29, 2023, this

---

[8] It is unclear when Mr. Kieffer ceased representing the Kruglyaks. No motion for withdrawal or order allowing Mr. Kieffer's withdrawal appears in the record.

Court denied Mr. Kruglyak's motion to convert the appeal to a Tennessee Rule of Appellate Procedure Rule 10 extraordinary appeal because the appeal is from a final judgment and is therefore an appeal as of right pursuant to Tennessee Rule of Appellate Procedure 3.

Mr. Kruglyak subsequently filed a "Motion to Amend Case Caption and Remove Appellant Nataliya M. Kruglyak from the Appeal," averring that Ms. Kruglyak had "signed off her ownership" of the Kruglyaks' property via a deed of gift in 2013 and was residing in Bristol, Virginia. Mr. Kruglyak presented various documents indicating that Ms. Kruglyak currently resided at an address in Bristol, Virginia. However, he did not include any documentation of the conveyance he claimed Ms. Kruglyak had made of her interest in the Kruglyaks' property. On August 9, 2023, this Court entered an order, *inter alia*, directing Ms. Kruglyak to file a brief within fifteen days of the order's entry or show cause why this appeal should not be submitted on the briefs of the other parties. On September 8, 2023, this Court entered an order denying Mr. Kruglyak's motion to amend the style of the case. Because Ms. Kruglyak had not filed a brief in the time allotted in this Court's show cause order, this Court directed that the appeal would be submitted on the briefs of Mr. Kruglyak and the Hurons. This appeal then proceeded.

## II. Issues Presented

Mr. Kruglyak has presented the following issues on appeal, which we have consolidated, reordered, and restated as follows:

1.     Whether the trial court erred by granting to the Hurons an easement by implication and necessity.

2.     Whether the trial court erred by creating a utility easement.

3.     Whether the trial court abused its discretion by (a) issuing a decision on an issue not raised in the complaint, (b) entertaining a meritless petition, (c) failing to reprimand the Hurons' counsel for defrauding the court, (d) failing to "maintain impartiality by not ruling" on Mr. Kruglyak's motion for summary judgment, (e) abusing judicial powers, and (f) admitting "misleading" evidence.

4.     Whether the trial court erred by exercising subject matter jurisdiction over parking fees and fines allegedly due to Mr. Kruglyak and thus depriving Mr. Kruglyak of his "landowners' rights" to obtain parking fees and fines.

5.     Whether Mr. Kruglyak is entitled to attorney's fees and expenses for land and building surveys and litigation before the trial court.

6.     Whether Mr. Kruglyak is entitled to attorney's fees on appeal.

7.     Whether this Court can "report" the Hurons' counsel for defrauding the trial court.

8.     Whether this Court can "report" the trial court judge for declining to reprimand the Hurons and their counsel.

The Hurons have presented an additional issue, which we have restated as follows:

9.     Whether errors alleged by Mr. Kruglyak not involving the trial court's grant of an easement by necessity and by implication should be considered on appeal.

## III.  Standard of Review

Our review of the trial court's judgment following a non-jury trial is *de novo* upon the record with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012).  "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006) (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001)).  The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

"Interpretation of a deed is a question of law." *Griffis v. Davidson Cnty. Metro. Gov't*, 164 S.W.3d 267, 274 (Tenn. 2005).  We review the trial court's conclusions of law *de novo* with no presumption of correctness. *Hughes v. Metro. Gov't of Nashville & Davidson Cnty*, 340 S.W.3d 352, 360 (Tenn. 2011).  "In construing a deed, our primary task is to ascertain the grantor's intent from the words of the deed as a whole and from the surrounding circumstances." *Griffis*, 164 S.W.3d at 274.

In addition to issues concerning the Driveway easements in this action, Mr. Kruglyak has asserted on appeal that the trial court abused its discretion in various ways, including entertaining a claim not raised in the pleadings, admitting "misleading"

evidence, declining to award attorney's fees and expenses to Mr. Kruglyak, and declining to "reprimand" the Hurons or their counsel. As this Court has explained, "a trial court will be found to have 'abused its discretion' only when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *In re Estate of Greenamyre*, 219 S.W.3d 877, 886 (Tenn. Ct. App. 2005) (internal citations omitted).

We respect Mr. Kruglyak's decision to proceed without benefit of counsel. We note that in reviewing pleadings, we "must give effect to the substance, rather than the form or terminology of a pleading." *Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012) (citing *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 104 (Tenn. 2010)). We note also that pleadings "prepared by pro se litigants untrained in the law should be measured by less stringent standards than those applied to pleadings prepared by lawyers." *Stewart*, 368 S.W.3d at 462 (citing *Carter v. Bell*, 279 S.W.3d 560, 568 (Tenn. 2009); *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003); *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003)). Parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," but we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

## IV. Threshold Matters

### A. Statement of the Evidence

As a threshold matter, we address the status of Mr. Kruglyak's statement of the evidence filed with the trial court. Although Mr. Kruglyak did not provide a trial transcript, he did timely file a statement of the evidence pursuant to Tennessee Rule of Civil Procedure 24(c), which provides:

> **Statement of the Evidence When No Report, Recital, or Transcript Is Available**. If no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available, or if the trial court determines, in its discretion, that the cost to obtain the stenographic report in a civil case is beyond the financial means of the appellant or that the cost is more expensive than the matters at issue on appeal justify, and a statement of the evidence or proceedings is a reasonable alternative to a stenographic report, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement should convey a fair, accurate and complete

account of what transpired with respect to those issues that are the bases of appeal. The statement, certified by the appellant or the appellant's counsel as an accurate account of the proceedings, shall be filed with the clerk of the trial court within 60 days after filing the notice of appeal. Upon filing the statement, the appellant shall simultaneously serve notice of the filing on the appellee, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal. Proof of service shall be filed with the clerk of the trial court with the filing of the statement. If the appellee has objections to the statement as filed, the appellee shall file objections thereto with the clerk of the trial court within fifteen days after service of the declaration and notice of the filing of the statement. Any differences regarding the statement shall be settled as set forth in subdivision (e) of this rule.

Subdivision (e) provides in pertinent part: "Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court."

Ergo, according to Rule 24(c), when no "stenographic report, substantially verbatim recital or transcript of the evidence" is available, the appellant shall prepare and file a statement of the evidence, serving a copy on opposing counsel. The appellee should then "file objections thereto with the clerk of the trial court within fifteen days after service of the declaration and notice of the filing of the statement." Any differences between the two shall be resolved by the trial court. With an exception not applicable here, Rule 24(f) provides:

The trial judge shall approve the transcript or statement of the evidence and shall authenticate the exhibits as soon as practicable after the filing thereof or after the expiration of the 15-day period for objections by appellee, as the case may be, but in all events within 30 days after the expiration of said period for filing objections. Otherwise the transcript or statement of the evidence and the exhibits shall be deemed to have been approved and shall be so considered by the appellate court[.]

In the case at bar, Mr. Kruglyak included with his statement of the evidence a certificate of service on the Hurons' counsel. The Hurons did not file any objections to the statement, and the appellate record does not indicate whether the trial court reviewed the statement pursuant to Rule 24(e) or (f). The Hurons do not mention the statement of the evidence in their appellate brief. According to Rule 24(f), in the absence of any

action taken by the trial court, this Court would then consider the statement of the evidence as approved by the trial court.

Nonetheless, this Court has previously determined that when a statement of the evidence upon which a trial court took no action is "deficient on its face," this Court "will not consider it as a true and accurate description of what transpired in the trial court." *See Womble v. Womble*, No. M2011-00605-COA-R3-CV, 2012 WL 5993735, at *2 (Tenn. Ct. App. Nov. 30, 2012); *see also Karpovich v. Brannick*, No. W2017-01796-COA-R3-JV, 2019 WL 126879, at *5 (Tenn. Ct. App. Jan. 8, 2019) (declining to consider the appellant's statement of the evidence even though no objections had been filed by the appellee and the trial court had not taken action concerning it because a "review of the entire record 'shows plainly that [the Statement of the Evidence] does not convey a fair, accurate and complete account of transpired in the [Juvenile Court] below." (quoting *Womble*, 2012 WL 5993735, at *2)).

We find two problematic deficiencies in Mr. Kruglyak's statement of the evidence. First, he failed to certify his statement as "an accurate account of the proceedings" pursuant to Rule 24(c). Second, Mr. Kruglyak divided his statement into two parts: "Facts and Circumstances Preceding the Trial" and "Trial of September 12, 2022." Mr. Kruglyak's description of facts and circumstances preceding the trial mirrors his version of the facts as stated in his pleadings and is not a recounting of the evidence presented at trial. In contrast, his description of the trial proceedings is a relatively objective summary of testimony and exhibits presented by both parties. Upon review of the record, we determine that we must disregard the first section of Mr. Kruglyak's statement of the evidence regarding the factual and procedural history prior to trial because this section is deficient on its face. However, we further determine that we may consider the second portion of Mr. Kruglyak's statement of the evidence as if it had been approved by the trial court as a description of what occurred during trial. We note that the exhibits themselves are in the appellate record.

## B. Documents not in the Record

In his appellate brief, Mr. Kruglyak frequently cites appendices he attached to his motion to convert this appeal to an extraordinary appeal. These appendices included several documents that were not presented to the trial court and are not in the appellate record. With exceptions not applicable here, only "those facts established by the evidence in the trial court and set forth in the record" may be considered by this Court on appeal. *See* Tenn. R. App P. 13(c). Documents included solely in an appendix to a party's brief or motion filed in the appellate court have not been properly supplemented to the record and will not be considered by this Court on appeal. *See* Tenn. R. App. P. 24(a), (e); *Jennings v. Sewell-Allen Piggly Wiggly*, 173 S.W.3d 710, 712 (Tenn. 2005)

("This attachment [to an appellate brief] . . . does not serve to supplement the record on appeal."). We will therefore not review documents presented in Mr. Kruglyak's appellate motions or appendices that have not been included in the record by the trial court. *See generally, Hessmer*, 138 S.W.3d at 903 ("[T]he courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.").

## C. Trial Court Judge's Impartiality

Throughout his appellate brief, Mr. Kruglyak implies that the trial court judge failed to treat this case with impartiality. He does not raise impartiality as a specific issue but does include a sub-issue under a heading concerning abuse of discretion wherein he questions whether the trial court failed "to maintain impartiality by not ruling on the Amended Motion for Summary [Judgment]."[9] Mr. Kruglyak continually refers to the Hurons' counsel as "attorney-judge," because the Hurons' counsel has served as a municipal judge. Mr. Kruglyak then implies positive bias on the part of the trial court judge toward the Hurons' counsel. Mr. Kruglyak also cites Tennessee Supreme Court Rule 10 ("Code of Judicial Conduct") while alleging that the trial court allowed a "biased and incomplete image" of the sloped portion of the Hurons' backyard to be admitted into evidence.

However, the record does not demonstrate that Mr. Kruglyak ever filed in the trial court a motion to recuse the trial court judge pursuant to Tennessee Supreme Court Rule 10B. Mr. Kruglyak also did not present a specific issue on appeal regarding recusal of the trial court judge. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review."). We therefore determine that Mr. Kruglyak has effectively waived any issue concerning recusal of the trial court judge. *See, e.g., Xcaliber Int'l Ltd., LLC v. Tenn. Dep't of Revenue*, No. M2017-01918-COA-R3-CV, 2018 WL 4293364, at *17-18 (Tenn. Ct. App. Sept. 10, 2018) (concluding that the plaintiff had waived a request for reassignment to a different trial court judge on remand

---

[9] Mr. Kruglyak's "Amended Motion for Summary [Judgment]" was actually the first motion for summary judgment appearing in the record, and it included several counterclaims brought by Mr. Kruglyak that were apparently dismissed by the trial court in an order entered on August 13, 2019, following a hearing. Mr. Kruglyak did not include this order or a transcript or statement of the evidence for the hearing preceding the order in the appellate record. *See Tarpley*, 174 S.W.3d at 740 ("In most situations, the inadequacy of an appellate record will be attributed to the appellant, whose responsibility it is to prepare a record that is adequate for a meaningful appellate review."). We are therefore unable to discern whether the trial court also denied Mr. Kruglyak's motion for summary judgment in the August 2019 order. Given that this matter proceeded to trial and that the Kruglyaks were represented by counsel at trial who, according to Mr. Kruglyak's statement of the evidence, did not raise an issue regarding the motion for summary judgment, we deem any issue regarding the trial court's purported failure to rule on the motion for summary judgment to have been waived at trial.

- 14 -

when the plaintiff had not filed a motion for recusal and had failed to raise the issue in its statement of the issues on appeal).

Moreover, upon our thorough review of the record, we discern no indication of bias or prejudice expressed or implied by the trial court judge. *See Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994) ("To disqualify, prejudice must be of a personal character, directed at the litigant, 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" (quoting *State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 697 (Mo. Ct. App. 1990))); *see, e.g.*, *Watson v. City of Jackson*, 448 S.W.3d 919, 933 (Tenn. Ct. App. 2014) ("Although we are cognizant of the fact that the trial judge declined to grant any of [the appellant's] *pro se* post-trial motions, it is well-settled that '[a]dverse rulings by a trial judge . . . are not usually sufficient to establish bias.'" (quoting *Ingram v. Sohr,* No. M2012-00782-COA-R3-CV, 2013 WL 3968155 at *31 (Tenn. Ct. App. July 31, 2013))). Mr. Kruglyak's overt and implied allegations of partiality on the trial court judge's part are without merit as to the issues raised on appeal.

## V. Easement

Upon finding that the Hurons had "carried their burden of proof as to an easement by implication and an easement by necessity," the trial court set forth directions regarding how the parties, as "the owners of the adjoining properties involved in this litigation," and "their tenants, occupants, or designee[s]" would be able to utilize the Driveway under the "driveway sharing easements." The trial court thus found that the Driveway was indeed shared and that the Hurons had successfully demonstrated that they had an easement by implication and necessity over the half of the Driveway located on the Kruglyaks' property. We note that Mr. Kruglyak did not claim an easement over the half of the Driveway located on the Hurons' property. In part, the relief Mr. Kruglyak requested in both his response opposing the declaratory judgment petition and his "Amended Motion for Summary Judgment" was for the trial court to "alter or amend" the parties' deeds to remove the "servitude clause" or grant a permanent injunction extinguishing the easement. In his appellate brief, Mr. Kruglyak argues that the "secondary driveway" added to the Kruglyaks' property by their predecessors in title "terminates any need for [the Kruglyaks] to share the [D]riveway and allows them an opportunity to build the fence in the middle of the grandfathered [D]riveway where [the Kruglyaks'] property border [lies]."

In other words, the relief requested by Mr. Kruglyak would include his ceasing to share the Driveway and having the ability to divide the Driveway down the middle with a fence. Upon thorough review of the record and applicable authorities, we determine that the trial court did not err in finding that the parties had "driveway sharing easements" and

that the Hurons had established implied easements (by prior use and necessity) over the half of the Driveway located on the Kruglyaks' property. Setting aside whether Mr. Kruglyak's pleadings initiated a proper procedural means of seeking the relief he desired, his request to extinguish the shared driveway easement could not be granted because it would have interfered with the Hurons' legally permissible enjoyment and use of the Driveway.

"An easement is a right an owner has to some lawful use of the real property of another." *Cellco P'ship v. Shelby Cnty.,* 172 S.W.3d 574, 588 (Tenn. Ct. App. 2005) (quoting *Pevear v. Hunt,* 924 S.W.2d 114, 115 (Tenn. Ct. App. 1996)) (internal citation omitted). Tennessee courts recognize several different types of easements, which this Court has summarized as follows:

> (1) express grant, (2) reservation, (3) implication, (4) prescription, (5) estoppel, and (6) eminent domain. Easements can be divided into two broad classes, easements appurtenant, and easements in gross. In an easement appurtenant, there are 2 tracts of land, the dominant tenement, and the servient tenement. The dominant tenement benefits in some way from the use of the servient tenement. Easements in gross are simply a personal interest or right to use the land of another which does not benefit another property, or dominant estate, thus easements in gross usually involve only one parcel. An easement appurtenant to land is favored over an easement in gross in Tennessee.

*Cellco*, 172 S.W.3d at 588 (quoting *Pevear*, 924 S.W.2d at 115-16) (internal citations omitted). "An easement appurtenant runs with the land and 'may be enforced by subsequent purchasers of the dominant tenement against owners of the servient tenement.'" *Stange v. Roberts*, No. M2019-01060-COA-R3-CV, 2020 WL 1808615, at *3 (Tenn. Ct. App. Apr. 9, 2020) (quoting *Holder v. Serodino*, No. M2014-00533-COA-R3-CV, 2015 WL 5458377, at *8 (Tenn. Ct. App. Sept. 16, 2015)).

In the instant action, the trial court found that the Hurons had proven two types of easements: an "easement by implication" and an "easement by necessity." Similarly, in *Ingram v. Wasson*, 379 S.W.3d 227, 238-39 (Tenn. Ct. App. 2011), the trial court had found the same two types of easements, and this Court noted that "[d]ifferentiating between the two types of easements can be confusing." *Id.* at 239. As the *Ingram* Court explained:

> Some clarification can be achieved by reference to the Restatement (Third) of Property ("The Restatement"). The Restatement states that the intent to create an easement, or servitude, "may be express or implied. No

particular form of expression is required." Restatement (Third) of Prop.: Servitudes § 2.2 (2008). The terms or circumstances surrounding the conveyance of an interest in land may give rise to an implied easement or servitude. *Id.* at cmt (b).

In this case, both types of easement found by the trial court are, in fact, implied easements. *See* 25 Am. Jur. 2d, *Easements and Licenses* §§ 19-38 (2004) (types of easements created by implication); *see also Cellco*, 172 S.W.3d at 591 (easement of necessity "is a type of easement by implication") (quoting *Gowan v. Crawford*, 599 So. 2d 619, 621 (Ala. 1992)). The first type, referred to by the trial court and in *Cellco* as an "easement by implication," is termed in the Restatement as a "Servitude[ ] Implied From Prior Use." Restatement (Third) of Prop.: Servitudes § 2.12. *See also* Am. Jur. 2d, *Easements and Licenses* § 22 ("Easements Implied from Preexisting Uses: Generally"). The Restatement describes it as follows:

Unless a contrary intent is expressed or implied, the circumstance that prior to a conveyance severing the ownership of land into two or more parts, a use was made of one part for the benefit of another, implies that a servitude was created to continue the prior use if, at the time of the severance, the parties had reasonable grounds to expect that the conveyance would not terminate the right to continue the prior use.

The following factors tend to establish that the parties had reasonable grounds to expect that the conveyance would not terminate the right to continue the prior use:

(1) the prior use was not merely temporary or casual, and

(2) continuance of the prior use was reasonably necessary to enjoyment of the parcel, estate, or interest previously benefited by the use, and

(3) existence of the prior use was apparent or known to the parties, . . . [.]

Restatement (Third) of Prop.: Servitudes § 2.12. The Restatement explains that the rule regarding easements implied from prior use is based on the assumption that people intend to buy and sell land with the existing access arrangements, and it furthers the policy of protecting the reasonable expectations and the intent of parties to such transactions. *Id.* at cmt (a). *Compare* 25 Am. Jur. 2d *Easements and Licenses* §§ 25-29 (listing requisites for easement by implication from preexisting use), *Cellco*, 172 S.W.3d at 589 (listing elements for easement by implication).

The second type of easement found in this case by the trial court was referred to by the trial court and in *Cellco* as a common law easement by necessity or "way" of necessity. *See Cellco*, 172 S.W.3d at 591-92. Similarly, the Restatement refers to this type of easement as a servitude or easement "created by necessity." *See* Restatement (Third) of Prop.: Servitudes § 2.15 ("Servitudes Created By Necessity"); *see also* 25 Am. Jur. 2d *Easements and Licenses* § 30 ("Ways of Necessity"). The Restatement describes this type of easement as follows:

> A conveyance that would otherwise deprive the land conveyed to the grantee, or land retained by the grantor, of rights necessary to reasonable enjoyment of the land implies the creation of a servitude granting or reserving such rights, unless the language or circumstances of the conveyance clearly indicate that the parties intended to deprive the property of those rights.

Restatement (Third) of Prop.: Servitudes § 2.15; *see also Cellco*, 172 S.W.3d at 592 (listing prerequisites for a finding of an easement by necessity). The Restatement explains that the rule on an easement created by necessity is based in part on the presumed intent of the parties to convey, or retain, all rights necessary to permit the enjoyment of the subject property, including the right of access. Restatement (Third) of Prop.: Servitudes § 2.15 cmt (a). It is also based on public policy favoring utilization of land and the avoidance of the cost of requiring a landlocked property owner to acquire access rights from a neighboring landowner. *Id.*; *see also Cellco*, 172 S.W.3d at 591-92.

As can be seen, there is considerable overlap between an easement implied from prior use and an easement created by necessity. Both are implied, both arise from a conveyance, both hinge on a finding of necessity. Hence, the confusion. To distinguish between them, an easement created

by necessity "does not depend on a prior use" and the fact that any prior use "is permissive is irrelevant to the question [of] whether [an] easement [created by] necessity will be deemed to exist." 25 Am. Jur. 2d *Easements and Licenses* § 32. Moreover, an easement created by necessity "need not be in existence at the time of the conveyance" and may allow for a route of access where one previously did not exist. *Id.*; *see Cellco*, 172 S.W.3d at 591.

*Id.* at 239-40 (footnote omitted). As in *Ingram*, we will utilize the terminology from the Restatement, namely "easement implied from prior use" and "easement created by necessity," in the following analysis to "help distinguish between the two types of implied easement." *See id.* at 240 n.16.

## A. Waiver

At the outset, we address Mr. Kruglyak's contention that the trial court abused its discretion by "issuing [a] decision about the easement when it was not requested" in the Hurons' petition for declaratory judgment. He argues that the Hurons did "not allege and claim an easement by either express grant, prescription, implication, or necessity . . . ." Although he does not frame this contention as a waiver issue, Mr. Kruglyak is essentially arguing that the Hurons waived any claim of an easement by failing to raise it in their petition. *See e.g.*, *Douglas v. Cornwell*, No. E2016-00124-COA-R3-CV, 2016 WL 5416338, at *4-5 (Tenn. Ct. App. Sept. 28, 2016) (determining that the appellant had waived claims of an easement by express grant and an easement by estoppel by failing to assert them in her pleadings or at trial). We agree with Mr. Kruglyak's assertion that the Hurons did not expressly claim an easement in their petition. However, upon careful review of the record, we determine that the Hurons' claims of an implied easement from prior use and an implied easement created by necessity were tried by implied consent and therefore were not waived by the Hurons.

Tennessee Rule of Civil Procedure 15.02 creates an exception to the general rule that "[j]udgments awarded beyond the scope of the pleadings are void." *See Randolph v. Meduri*, 416 S.W.3d 378, 384 (Tenn. Ct. App. 2011). Rule 15.02 provides in pertinent part:

Amendments to Conform to the Evidence.—When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any

- 19 -

party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

"'Generally speaking, trial by implied consent will be found where the party opposed to the amendment knew or should reasonably have known of the evidence relating to the new issue, did not object to this evidence, and was not prejudiced thereby.'" *Hiller v. Hailey*, 915 S.W.2d 800, 804 (Tenn. Ct. App. 1995) (quoting *Zack Cheek Builders v. McLeod*, 597 S.W.2d 888, 890-91 (Tenn. 1980)). As this Court has explained, "[t]rial by implied consent is not shown by the presentation of evidence that is relevant to an unestablished issue when that evidence is also relevant to the established issue." *Christmas Lumber Co., Inc. v.. Valiga*, 99 S.W.3d 585, 593 (Tenn. Ct. App. 2002) (quoting *McLemore v. Powell*, 968 S.W.2d 799, 803 (Tenn. Ct. App. 1997)). "The determination of whether there was implied consent rests in the discretion of the trial judge, whose determination can be reversed only upon a finding of abuse." *Zack Cheek Builders, Inc. v. McLeod*, 597 S.W.2d 888, 891 (Tenn. 1980).

The Hurons did not mention the term, "easement," in their petition for declaratory judgment. They did state that the adjoining properties at issue "are served by a shared driveway between the two properties." This statement implied the type of "driveway sharing easements" found by the trial court but did not directly claim an easement. The relief the Hurons requested in their petition included a declaration of "the rights and obligations of the parties" and an injunction prohibiting the Kruglyaks from impeding the Hurons' access to their own property. In response to Mr. Kruglyak's waiver argument on appeal, the Hurons note that they also requested in their petition that the trial court "grant such other and further relief as is deemed equitable." We cannot agree that this catch-all phrase sufficed as a specific easement claim. The Hurons did not file a motion to amend their petition in the trial court.

However, according to the statement of the evidence, the Hurons' counsel presented an opening statement "alleging that the evidence [would] show an easement from prior use and necessity of [the Hurons] to access the [D]riveway for their personal use." The Kruglyaks' counsel then presented an opening statement described as follows in the statement of the evidence:

[A]ttorney Kieffer proceeds with the opening statement, stating that the chain of title record and photographic evidence will show that there is no prescriptive easement nor a landlock of the Hurons' property to warrant the easement either by necessity or by implication; that Hurons have plenty of gently sloped backyard land for accessing their property and parking multiple vehicles; and that Kruglyak's property has its own driveway for parking and utility vehicles access, and that the shared driveway has been

- 20 -

nothing but nuisance that made Kruglyak's property not suitable for residential enjoyment.

(Emphasis added.) Therefore, from the beginning of the trial, both parties clearly understood that an easement implied from prior use and an easement created by necessity were at issue. The Kruglyaks raised no objection during trial to the Hurons' pursuit of an easement claim, which was set forth in the Hurons' counsel's opening statement.

Moreover, in ruling on the implied easement claims (both by prior use and necessity), the trial court apparently exercised its discretion to find that the claims had been tried. *See* Tenn. R. Civ. P. 15.02 (providing that failure to amend a pleading to include issues tried by express or implied consent "does not affect the result of the trial of these issues"). We discern no abuse of discretion in the trial court's entertainment of the easement claims.[10] Furthermore, Mr. Kruglyak waived any objection to the Hurons' assertion of their easement claims at trial by failing to object before the trial court. *See, e.g.*, *C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 679 (Tenn. Ct. App. 2007) ("[I]t is well-settled that an issue not raised in the trial court will not be entertained on appeal.").

### B. Easement Implied from Prior Use

In finding that the Hurons had established an "easement by implication," the trial court referenced the following elements, noted by the *Ingram* Court as the elements for an easement implied by prior use:

> (1) A separation of the title; (2) Necessity that, before the separation takes place, the use which gives rise to the easement shall have been long established and obvious or manifest as to show that it was meant to be permanent; and (3) Necessity that the easement be essential to the beneficial enjoyment of the land granted or retained.

*Ingram*, 379 S.W.3d 227 at 241 (quoting *Cellco*, 172 S.W.3d at 589). "Courts in Tennessee have interpreted the term 'necessity' as meaning 'reasonably necessary' for

---

[10] In addition to ruling on the implied easement claims, the trial court found in its final order that the Hurons had failed to prove an easement by prescription. *See Haun v. Haun*, No. E2004-01895-COA-R3-CV, 2005 WL 990566, at *3 (Tenn. Ct. App. Apr. 28, 2005) (explaining the elements required to establish a prescriptive easement). According to the statement of the evidence, the Kruglyaks' counsel made the only mention during trial of a prescriptive easement in his opening statement. Because neither party has raised an issue on appeal concerning the trial court's consideration and rejection of a prescriptive easement claim, we will not review that ruling here. *See* Tenn. R. App. P. 13(b).

the enjoyment of the dominant tenement." *Fowler v. Wilbanks*, 48 S.W.3d 738, 741 (Tenn. Ct. App. 2000); *see Ingram*, 379 S.W.3d at 242.

Although not entirely clear, Mr. Kruglyak appears to argue that the first element of a separation of title was not established. However, the trial court noted in its final order the parties' stipulation at trial that the Driveway "was created through a common source of title between the properties by Deed of G. W. Keesling and wife, Ethel Keesling in March of 1940." The statement of the evidence also contains this stipulation, and the deeds presented as exhibits support the conclusion that the first element was satisfied.

As to the second element of long-established and obvious use, the trial court noted the Hurons' testimonies that they had used the Driveway since they purchased their property in 1992. Although Mr. Kruglyak has challenged the manner in which the Hurons had utilized the Driveway, he has never denied the fact that they had used the Driveway throughout the time that he and his sister owned the adjoining property. We determine the second element to have been satisfied as well.

Mr. Kruglyak focuses his argument on the third element, insisting that the Driveway easement is not necessary to the beneficial enjoyment of the Hurons' property because the Hurons can access their property via the Old Knob Road access at the back of their property and via street parking on Windsor Avenue at the front. The Hurons respond that the evidence supported the trial court's findings because the alternate access routes identified by Mr. Kruglyak would require the Hurons to undertake a "lengthy walk" and to navigate steep inclines or stairways. Upon careful consideration, we determine that the evidence did not preponderate against the trial court's findings that an easement was reasonably necessary and that an "easement by implication" from prior use had been established.

As to reasonable necessity, the trial court concluded:

> The Court finds that [The Hurons] are unable to access their property off [Old Knob Road] and that they are prevented from being able to drive onto the driveway up to the rear entrance to enter or unload items such as groceries as the back of their lot is a steep incline which is visible in the exhibits entered in this matter. Because of the small inclined area at the rear of their property, in order to access their property would necessitate climbing and/or descending additional steep steps to gain access to their rear door, which due to [the Hurons'] age and health condition is not feasible.

The trial court also noted the Hurons' testimonies and exhibits in its findings of fact, stating:

> [The Hurons] testified and have introduced photographs as Exhibits showing the installation of a second access from [Old Knob Road] to their property which would not be possible to access due to the steep terrain and incline. (See Exhibit 7, Exhibit 8, Collective Exhibits 18, 19, and 20.)

The exhibits identified by the trial court included a photograph of the slope of the Hurons' backyard (Exhibit 7), a photograph of the back entrance to the Hurons' home with the steps mentioned in the order (Exhibit 8), a photograph depicting the Hurons' backyard slope from Old Knob Road (Exhibit 18), a collection of photographs showing the back steps of the Hurons' property (Exhibit 19), and a photograph of the Hurons' upper backyard (Exhibit 20).

On appeal, Mr. Kruglyak questions the accuracy of the photographs depicting the slope of the Hurons' backyard. However, the statement of the evidence indicates that the Kruglyaks' counsel raised no objections to the Hurons' photographic exhibits at trial. We therefore deem any objections to the photographic exhibits on appeal to have been waived. *See, e.g.*, *C & W Asset Acquisition*, 230 S.W.3d at 679. According to the statement of the evidence, Mr. Huron testified to the accuracy of the exhibits and the difficulty of entering his property via the Old Knob Road access, particularly during winter weather. On cross-examination, Mr. Huron acknowledged that Exhibit 18 showed a storage area he maintained in his backyard and that Exhibit 19 showed "a walkable pathway" from the house to the storage area that included the steps. Ms. Huron acknowledged that she sometimes walked from her home to a birdfeeder in the backyard. These acknowledgments by the Hurons did not include an admission that they regularly walked what the trial court found to be the "small inclined area at the rear of their property" to Old Knob Road.

The trial court's findings indicate that it examined the exhibits, which we agree portray a steep incline down from the Old Knob Road access to the Hurons' backyard. The court also clearly credited Mr. Huron's testimony regarding the difficulty of using the Old Knob Road access.[11] We emphasize that the trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones*, 92 S.W.3d at

---

[11] We note that the trial court's finding that the Hurons' "age and health condition" contributed to the infeasibility of the Old Knob Road access is not determinative of whether an implied easement, by prior use or necessity, exists in this case. Because "[a]n easement appurtenant runs with the land," *see Stange v. Roberts*, 2020 WL 1808615, at *3, the necessity at issue is not dependent on the personal characteristics of the property owners.

- 23 -

838. The evidence did not preponderate against the trial court's finding that the Old Knob Road access was not a viable access to the Hurons' property.

On appeal, Mr. Kruglyak argues that as an alternative to using the Old Knob Road access to the Hurons' property, the Hurons could simply park on the street and walk up their side of the Driveway and the stairs at the front of their property to their home. However, having focused on the Hurons' allegedly impermissible use of the Driveway as a parking area, Mr. Kruglyak did not argue in his pleadings before the trial court that street parking was a viable alternative to the Driveway as a means of ingress and egress. According to the statement of the evidence, the Kruglyaks' counsel, during his opening statement, presented the Old Knob Road access as an alternative to the Driveway but did not argue that street parking on Windsor Avenue would suffice to access the Hurons' property. We therefore find that the trial court did not err in omitting a finding regarding access from the street because such was not presented to the court as an alternative access.

Moreover, the only evidence presented at trial that would support street parking as a substitute for the Driveway was the Kruglyaks' presentation of a photograph showing Mr. Huron's truck parked on Windsor Avenue in front of his home and Mr. Huron's acknowledgements during cross-examination that he was capable of walking from the street to his home and that he had rolled waste disposal containers up and down his driveway. Considering the necessity of delivering and unloading items to the Hurons' home, noted by the trial court, we do not find that the Kruglyaks established street parking as a viable substitute for the Driveway.

Upon thorough review of the proof presented in the record, we discern no error in the trial court's finding that the Hurons established the element of reasonable necessity by a preponderance of the evidence. We therefore conclude that the trial court did not err in finding that the Hurons had proven an easement implied from prior use over the portion of the Driveway located on the Kruglyaks' property.

C.  Easement Created by Necessity

The trial court also found that the Hurons had proven an implied easement created by necessity over the Driveway. As noted previously, there is a great deal of overlap between the elements required to establish an implied easement based on prior use and one created by necessity. *See Ingram*, 379 S.W.3d at 240. In the instant action, the distinguishing factors are that an easement created by necessity "'does not depend on a prior use'" and whether prior use was "'permissive is irrelevant to the question [of] whether [an] easement [created by] necessity will be deemed to exist.'" *Id.* (quoting 25 Am. Jur. 2d *Easements and Licenses* § 32).

- 24 -

In opposition to both types of implied easements (prior use and necessity), Mr. Kruglyak maintains that ingress and egress via the Driveway are not necessary to the Hurons' use and enjoyment of their property. He also notes the proposition that an implied easement by necessity may be terminated if the necessity upon which it is based no longer exists. *See Moore v. Queener*, 464 S.W.2d 296, 301 (Tenn. Ct. App. 1970) ("Easements of necessity are extinguished when the need thereof fails.").

Having determined that the trial court did not err in finding the shared driveway easement to be reasonably necessary for the Hurons' ingress and egress to their property, we further determine that this finding was not dependent on the element of prior use or on the fact that the prior use was permissive. For the reasons delineated in the preceding section of this Opinion, we conclude that the evidence did not preponderate against the trial court's finding that the Hurons had established an implied easement created by necessity, as well as an implied easement from prior use, over the portion of the Driveway located on the Kruglyaks' real property.

## VI. "Utility Easement"

Mr. Kruglyak asserts that the trial court erred by creating what he terms a "utility easement" over the Driveway. He takes issue with the trial court's directions in its final order regarding how the parties may utilize the Driveway. The court instructed:

> The Court finds that the driveway sharing easements are that the owners of the adjoining properties involved in this litigation and/or their tenants, occupants, or designee shall have the right to drive vehicles up and down the driveway and to stop for a period no longer than one hour at any location of the driveway temporarily for purposes of loading or unloading property or passengers and/or for the use by temporary service vehicles such as electricians, plumbers, yard workers, etc. while performing their services and that except for such service people while performing their services, no person shall park a vehicle over night.

We find that Mr. Kruglyak has misapprehended the meaning of a utility easement. Moreover, in providing the easement limitations quoted above, the trial court actually granted partial relief to Mr. Kruglyak by directing the parties to utilize the shared driveway easements as <u>driveway</u> easements, not <u>parking</u> easements.

As this Court explained in *Cellco*:

The general rule regarding the permissible use of an easement can be stated as follows:

> While a private way may not be used by the public generally or by any one having no better right than the general public, the owner of such a way is not limited to its use by himself, but it may be used by his family, by pets, by tenants occupying the land with his authority, by his servants, agents, or employees in conducting his business, by persons transacting business with him, or by guests for social purposes, except in cases where the right of way is created by express agreement and the user is restricted by the terms of the agreement. 28A C.J.S. Easements § 164 (1996).

172 S.W.3d at 597 (emphasis omitted).

In this case, the trial court provided for the necessity of "temporary service vehicles such as electricians, plumbers, yard workers, etc." to be allowed to park on the Driveway "while performing their services." These service or "utility" vehicles would thus qualify as "servants, agents, or employees in conducting [the parties'] business" or "persons transacting business with" the parties. *See id.* We emphasize that the trial court has provided for the use of the Driveway in this way to the owners of either property involved in this litigation because the court found "driveway sharing easements."

In raising an issue concerning a "utility easement," Mr. Kruglyak asserts principles limiting governmental interference with private real property rights and condemnation of private lands. These principles are inapplicable to the easement limitations provided by the trial court here concerning adjoining parties' concurrent rights over the shared driveway easements and their respective abilities to provide access for service providers to their properties.

However, Mr. Kruglyak was initially correct in his pleadings when he asserted that a driveway easement does not equate to a parking easement. *See Coolidge v. Keene*, 614 S.W.3d 106, 119 (Tenn. Ct. App. 2020) ("The driveway easement . . . is not a parking easement"). In *Coolidge*, this Court affirmed the trial court's dismissal of one party's claim that an adjoining property owner had abandoned an easement leading to a free-standing garage that was no longer in use. *See Coolidge*, 614 S.W.3d at 117. This Court also affirmed the *Coolidge* trial court's finding that the driveway portion of the easement at issue was a mutual one benefiting both property owners. *Id.* at 119.

The *Coolidge* Court emphasized the purpose of the easement as a <u>driveway</u> easement, stating in pertinent part:

> It is for egress and ingress. If, for instance, Mr. Coolidge wishes to use the driveway to access the back of his property, that is consistent with the Keenes' rights under the driveway easement, as well as Mr. Coolidge's own rights retained as owner of the servient estate. Neither party may block the other party's use of the driveway. . . . Going forward, the parties should cooperate in using the shared driveway and respect each other's rights.

*Id.* We discern no error in the trial court's limitations issued to the parties regarding how they may utilize the shared driveway easements, and as in *Coolidge*, we urge the parties to cooperate with each other when using the shared driveway and respect each other's rights. *See id.*

## VI. Attorney's Fees and Expenses at Trial

Mr. Kruglyak asserts that he is entitled to an award of "attorney fees, land and building survey expenses, and costs of litigation" before the trial court. On appeal, Mr. Kruglyak again cites principles of governmental interference with private real property rights and condemnation of private lands not applicable here. In his "amended" motion for summary judgment, Mr. Kruglyak requested that the trial court grant him "fees and costs of this litigation." Because the August 2019 order dismissing Mr. Kruglyak's counterclaims is not in the appellate record, it is unclear whether the trial court expressly denied Mr. Kruglyak's request for attorney's fees and costs when dismissing his counterclaims. In any case, we find no basis for an award of attorney's fees or discretionary costs in this action.

In considering claims for attorney's fees, Tennessee courts adhere to the "American rule," which instructs that "a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). In the instant action, the parties had no contractual provision creating a right to recover attorney's fees, and no statutory provision created such a right.

As to the expenses claimed by Mr. Kruglyak, he filed no motion for discretionary costs pursuant to Tennessee Rule of Civil Procedure 54.02(2), which provides in pertinent part:

> Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion. Discretionary costs allowable are: reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions (or stipulated reports) and for trials, reasonable and necessary interpreter fees not paid pursuant to Tennessee Supreme Court Rule 42, and guardian ad litem fees; travel expenses are not allowable discretionary costs. Subject to Rule 41.04, a party requesting discretionary costs shall file and serve a motion within thirty (30) days after entry of judgment.

"Pursuant to rule 54.04, trial courts are vested with wide discretion in awarding discretionary costs," and "[g]enerally, trial courts award such costs to whichever party ultimately prevails in the lawsuit, provided the prevailing party has filed a timely, properly supported motion." *Sanders v. Gray*, 989 S.W.2d 343, 345 (Tenn. Ct. App. 1998) (internal citations omitted). Mr. Kruglyak was not the prevailing party in this action, and he filed no Rule 54.04 motion. His request for attorney's fees and expenses incurred at trial is unavailing.

## VII. Attorney's Fees and Expenses on Appeal

Having determined that no basis existed for an award of attorney's fees and expenses to Mr. Kruglyak in the trial court, we further determine that no basis exists for an award of attorney's fees and expenses to him on appeal. We therefore exercise our discretion to deny Mr. Kruglyak's request for attorney's fees and expenses on appeal. *See Chaffin v Ellis*, 211 S.W.3d 264, 294 (Tenn. Ct. App. 2006) ("An award of appellate attorney's fees is a matter within this Court's sound discretion."). Additionally, we note that *pro se* appellants may not recover attorney's fees. *See Houston v. Logan*, No. E2022-01696-COA-R3-CV, 2023 WL 5247293, at *4 (Tenn. Ct. App. Aug. 16, 2023) ("[T]his Court has previously explained, albeit in a different context, that "'*pro se* litigants are not entitled to recover attorney fees. . . . Not even attorneys who proceed *pro se* are entitled to recover fees.'" (quoting *Estate of Brakebill*, No. E2019-00215-COA-R3-CV, 2020 WL 5874874, at *6 (Tenn. Ct. App. Oct. 2, 2020))).

## VIII. Remaining Issues

The Hurons raise the following issue: whether this Court should consider Mr. Kruglyak's issues not related to the implied easements by prior use and by necessity. The Hurons assert that allegations raised by Mr. Kruglyak against the trial court judge and against opposing counsel are "outside the scope of appeal and are intended to disparage both the trial Judge and [the Hurons'] counsel." The Hurons state that such allegations

"have already been dismissed by the Board of Professional Responsibility or the Tennessee Board of Judicial Ethics." We have no documentation in the record regarding such complaints and note that responding to such would be outside this Court's purview. Therefore, we determine that Mr. Kruglyak's issues regarding whether the trial court abused its discretion in various ways involving alleged abuses of power and whether this Court may "report" the trial court judge or opposing counsel are without merit.

Furthermore, we have addressed Mr. Kruglyak's issues regarding attorney's fees and expenses. As a threshold matter, we have also addressed Mr. Kruglyak's implication of the trial court's impartiality, which we found to be unsubstantiated. Additionally, we determined that Mr. Kruglyak had not filed a Tennessee Supreme Court Rule 10B motion for the trial court judge's recusal.

Mr. Kruglyak also raises an issue concerning whether the trial court judge erred by exercising subject matter jurisdiction over parking fees and fines he claims to have been owed to him because the Hurons parked on the Driveway. He cites a City of Bristol, Tennessee, ordinance purportedly prohibiting unauthorized parking and compares the reciprocal daily parking charge he would have assessed against the Hurons to the costs of using municipal parking meters.[12] His jurisdictional argument involves his contention that the trial court interfered with his constitutional property rights.

Mr. Kruglyak's claim for parking fees was among the counterclaims dismissed by the trial court in its August 2019 order. The statement of the evidence reflects that at trial in September 2022, the Kruglyaks' counsel did not raise an issue regarding the dismissal of the counterclaims in general or the parking fees claim in particular. Upon review, we determine that Mr. Kruglyak waived any issue concerning his parking fees claim or other counterclaims. *See, e.g.*, *C & W Asset Acquisition*, 230 S.W.3d at 679. We also discern no error in the trial court's exercise of subject matter jurisdiction and no basis for Mr. Kruglyak's allegations that his constitutional property rights were violated by the trial court's decision.

## IX. Conclusion

For the foregoing reasons, we affirm the trial court's judgment in its entirety. We deny Mr. Kruglyak's request for attorney's fees and expenses on appeal. We remand this

---

[12] Although Mr. Kruglyak quoted from what he cited as "City of Bristol, Tennessee, Ordinance Chapter 70, Article I, Section 70.1," he did not provide the ordinance itself in the appellate record. We note that we are unable to review a city ordinance not provided in the record unless prompted by a party to take judicial notice of the ordinance. *See Williams v. Epperson*, 607 S.W.3d 289, 297 (Tenn. Ct. App. 2020) (citing Tenn. R. Evid. 202(b)).

matter to the trial court for enforcement of the judgment and collection of costs assessed below.  Costs on appeal are assessed to the appellant, Vladimir Kruglyak.


s/ Thomas R. Frierson, II_____
THOMAS R. FRIERSON, II, JUDGE